ST. LAWRENCE GENERAL TERM, September, 1849. *Paige,*
 *Willard, and Hand,* Justices.

## OTIS *vs.* SILL.

To create an estoppel *in pais,* a party must do an act, or make an admission,
 inconsistent with the claim he proposes to set up; and the other party must
 have acted upon the admission, and will be injured by allowing the truth of
 the admission to be disproved.

The act or admission must have been expressly designed to influence the conduct
 of another, and must in fact have influenced such conduct.

Where a mortgagee of chattels advertises the same for sale, under the power of
 sale contained in the mortgage, previous to the expiration of one year from
 the time of the filing of the mortgage, this excuses him from the obligation of
 filing a copy of the mortgage within 30 days previous to the expiration of the
 year, as required by the 3d section of the act in relation to chattel mortgages.
 (*Laws of* 1833, *p.* 402.)

The 3d section of that act is applicable only to cases where the mortgagee allows
 the mortgagor to continue in the possession of the mortgaged property after the
 expiration of the year, without taking the property into his actual possession,
 or adopting some proceeding to enforce the forfeiture of the mortgage, or to
 sell the equity of redemption of the mortgagor, previous to the expiration of the
 year from the filing of the mortgage.

The act of April 29, 1833, in relation to chattel mortgages, did not repeal the stat-
 ute concerning fraudulent conveyances. It only added another to the grounds
 on which a mortgage of personal chattels will be declared void.

The object of the act was to create an additional official guard against fraud or
 collusion, by requiring the mortgage, or a copy thereof, to be filed.

The filing of the mortgage does not rebut the presumption of fraud, arising from
 the non-delivery of the property, or excuse the party who claims under the
 mortgage from affirmatively showing, where there is no change of possession,
 that the mortgage was made in good faith and without any intent to defraud
 creditors or purchasers.

The only effect of the act is, to require the party, in addition to such proof, to
 show that the mortgage, or a copy thereof, has been filed.

A mortgage professing to sell and assign to the mortgagee not only the scythes,
 iron, steel and coal then owned by the mortgagors, but also " all scythes, iron,
 steel and coal which may be purchased in lieu of the aforesaid property," is,
 as respects the property to be subsequently acquired, void for uncertainty.

At law, a grant or mortgage of property not then in existence, or not belonging
 to the mortgagors, but to be acquired *in futuro,* is void.

If such a grant or mortgage is valid in equity, it is only valid as a contract to as-
 sign when the property shall be acquired. And if it is enforced in equity, it
 can only be enforced as a right under the contract, and not as a trust attached
 to the property.

Otis *v.* Sill.

Where a mortgage upon scythes, &c. to be subsequently acquired, does not specify any scythes &c. in particular, but mentions generally all property of that description which may be subsequently purchased by the mortgagors, the mortgage does not become a specific lien on the subsequently acquired property, from the time the same is purchased, as against the mortgagors and persons claiming under them.

Such mortgage can only be regarded as a mere contract to give a further mortgage on the subsequently acquired property, binding on the mortgagors personally. And the only remedy of the mortgagee, on such a contract, is by an action, as a general creditor, to recover damages for a breach thereof.

The legal title to such subsequently acquired property is in the mortgagors, and may be seized by a judgment creditor of the mortgagors, and sold; and whatever right or interest they have therein will pass to the purchaser.

And as between the mortgagee and the purchaser, the former, by attending the sale upon the execution, and bidding upon the property, and omitting to give the bidders notice of his claim to the property, will be estopped from setting up, as against the purchaser, a right to a specific performance of the contract to give a mortgage on the property sold, under the execution.

Under such circumstances the principle of equity, that where one is silent when conscience commands him to speak, he will not be permitted to speak when conscience requires him to be silent, applies.

Under a complaint in the nature of a declaration in replevin, a plaintiff can not enforce a specific lien upon property.

Although the code has abolished the distinction between actions at law and suits in equity, and provides that there shall hereafter be but one form of action, it does not necessarily follow that the principles of law and equity are to be administered in the same action, and that a complaint may demand both legal and equitable relief; or that to a complaint setting up a legal claim the defendant may interpose a purely equitable defence. *Per* PAIGE, P. J.

Where a lease, taken by a member of a copartnership, is not taken by him expressly for the firm, but demises the premises to him individually, it does not belong to the partnership; and parol evidence that it was executed for the benefit of the partnership is inadmissible.

Where a mortgagee or assignee leaves goods mortgaged or assigned in the possession of the mortgagor or assignor, as his agent, this is not an actual change of possession, within the meaning of the 5th section of the statute of frauds.

The assignment of a lease for the purpose of securing to the assignee the payment of a debt owing by the assignors, which assignment transfers to the assignee certain property in a shop on the premises, is no evidence of the actual possession of the property by the assignee.

THIS was an action for taking and detaining personal property. It was commenced on the 28th of Nov. 1848, and tried at the Jefferson circuit in April, 1849, before Justice C. GRAY. The defendant justified taking the property, as under sheriff, by

virtue of two executions, issued on two judgments against James and Abel Whitcomb. One judgment was docketed on the 29th day of May, 1848, and the other on the 23d of September, 1848. The plaintiff claimed title to the personal property in question, being a quantity of iron and steel and 43½ dozen scythes, under a chattel mortgage dated October 18, 1847, given by the said James and Abel Whitcomb to the plaintiff. The mortgage, after describing the property mortgaged, consisting of iron, steel, coal, grass scythes, &c. contained the following clause : "All scythes manufactured out of the aforesaid iron and steel, and all scythes, iron, steel, and coal which may be purchased in lieu of the property aforesaid." The mortgage was payable one year after date, and authorized the mortgagee, if he should at any time deem the debt or property insecure, to take possession of the property, and sell the same previous to the time mentioned for the payment of the debt. The executions were delivered to the defendant on the 23d of October, 1848 ; and he, on the 24th of the same month, levied upon the property in question, and took it into his possession. The plaintiff proved by James Whitcomb that the witness and his son Abel were engaged in the business of manufacturing scythes, under the name of James Whitcomb & Son, from the 19th of September, 1843, until after August, 1848. A note for the payment of $1500 to the plaintiff, signed by James and Abel Whitcomb, payable one year after date, was attached to the mortgage. The witness testified that the note and mortgage were given to the plaintiff to secure him for his indorsements of the paper of James Whitcomb & Son, discounted to raise means to enable them to carry on their business. In October, 1848, the liabilities of the plaintiff for James Whitcomb & Son amounted to $1200. The witness left Watertown, where their business was conducted, in August, 1848. When he left, there were some scythes on hand ; some were in a barn, and some were in their shop. The barn was on the premises which the witness had occupied. The witness stated that some of the scythes and coal on hand in August, 1848, might, and some might not, have been the same which were included in the mortgage. He could not recollect whether the

bar iron on hand, or the iron out of which the scythes on hand were made, when he left, in August, 1848, were purchased before or after the execution of the mortgage. And he could not tell whether any part of the coal on hand when he left, was on hand when the mortgage was executed. On the 9th of Sept. 1843, N. Wiley executed and delivered to James Whitcomb as sole lessee, a lease for seven years, of the lower story of his machine shop, for the purpose of manufacturing edge tools and scythes; reserving an annual rent of $83. This lease Abel Whitcomb, in the name of James Whitcomb & Son, for the purpose of securing the plaintiff for his liabilities for James Whitcomb & Son, assigned to the plaintiff on the 20th of Oct. 1848. In the same assignment Abel Whitcomb, for the same purpose, assigned to the plaintiff all the machinery on the demised premises, and all the stock in the shop belonging to J. Whitcomb & Son. The witness James Whitcomb gave his son no authority, either written or parol, to assign the lease to the plaintiff. The defendant objected to the assignment as evidence, on the ground that James Whitcomb had not given Abel a power of attorney to make the assignment. The justice overruled the objection, and received the lease and assignment in evidence, and the defendant excepted. The witness testified that the lease was executed for the benefit of himself and son. This evidence was objected to by the defendant but received by the court. The witness further stated that when he left Watertown in August, 1848, he left his son in the management of the partnership business, and his son did all the business of the firm, after that time. The plaintiff proved that on the 19th day of Oct. 1847, he filed in the clerk's office of the county of Jefferson the mortgage in question. The plaintiff also proved that his clerk, by his direction, on the 16th of October, 1848, went to the shop of the Whitcombs, and to the barn on the place where James Whitcomb had resided, and took an inventory of the scythes, iron, steel and coal he found there, and advertised the same for sale under the mortgage. The notice of sale was dated Oct. 16, 1848. The sale was successively postponed to the 20th and the 25th of October, and to the 1st of November. The plaintiff's clerk found

Otis *v.* Sill.

scythes in the barn; and iron, scythes and steel in the shop. The plaintiff read in evidence a letter of Abel Whitcomb to him previous to the 11th of Oct. 1848, advising him of the necessity of selling the property embraced in his mortgage. The defendant's counsel offered to show, as evidence of fraud, the declarations of Abel Whitcomb made to the plaintiff's clerk at the time the former wrote the letter to the plaintiff in relation to the mortgage. This evidence was objected to by the plaintiff, and rejected by the court. The defendant moved for a nonsuit, on the following grounds: 1. The mortgage under which the plaintiff claimed title was void because a copy thereof was not filed at the end of the year; 2. There was no evidence of a change of possession of the property embraced in the mortgage, nor any excuse shown for not making the change. 3. A justification of the taking of the property by the defendant was established. 4. There was no evidence of a bona fide debt due to the plaintiff.

The defendant proved that after the levy he gave the key of the shop to N. Wiley, and told him to keep it; which he did. At the sale of the property by the defendant under the execution, which was in December, 1848, the plaintiff attended, and bid upon every article put up for sale, and bid off about 18 dozen scythes; and did not forbid the sale, or interpose any claim to any of the property sold. N. Wiley, the plaintiff in one of the executions, and one Woodruff, bid off, at the sale, all the property not purchased by the plaintiff. Abel Whitcomb was not in the shop from the 16th to the 24th of October. He went off and left a young man in charge, and did not return until after the levy. He had possession of the key of the shop until the levy. The defendant's counsel requested the justice to charge the jury, 1. That if the scythes were not made out of iron on hand at the time of the execution of the mortgage, and if the iron sold by the defendant was not on hand at that time, the verdict should be in favor of the defendant. 2. That the mortgage not having been re-filed at the end of the year, from the time it was originally filed, was void. 3. That if there was no actual change of possession of the property from the Whitcombs to the plaintiff, previous to the levy, the verdict should be for the

defendant. 4. That the lease was not legally assigned to the plaintiff. 5. That the plaintiff, by attending the sheriff's sale, and bidding on the property, and not giving notice of his claim to the property, was estopped from claiming title to it. 6. There was no evidence that any debt was due the plaintiff at the time of the levy.

The justice charged the jury that whether the mortgage was made bona fide, or whether there had been a sufficient change of possession of the property, were questions for the jury; that if the plaintiff, as indorser of the notes of the Whitcombs, had paid the indorsed notes, or were liable to pay them, it was a good consideration for the mortgage; that a mortgage upon property to be acquired subsequent to the execution of the mort gage, created a valid lien on the property when acquired, as between the parties, and was good as against third persons, if possession was taken before the attaching of a lien; that the important question was whether possession was taken by the plaintiff before the levy of the defendant; that the law required in this case that not only possession should have been taken by the plaintiff, but that it should also have been continued; whether taking the inventory, and the other acts of the plaintiff's clerk, amounted to taking possession, and to a continued change of possession, were questions for the jury; if they did, then the defendant acquired by his levy no lien, and the plaintiff was entitled to recover; that the statute, where a mortgage was filed, allowed the mortgagor to continue in possession; that a change of possession was only required where the mortgage was not filed; that if the plaintiff took possession of the property on the 16th of October, 1848, the omission to re-file the mortgage did not affect it; that the jury might regard the assignment of the lease to the plaintiff as evidence of actual possession of the property, &c.; that the plaintiff, by attending the sheriff's sale and bidding on the property, was not estopped from setting up a title to it; but it was for the jury to say whether these acts of the plaintiff did not show that he either considered his title invalid, or that he relinquished it.

Otis *v.* Sill.

The defendant excepted to the charge. The jury rendered a verdict for the plaintiff for $580.

*J. Mullin,* for the plaintiff.

*J. Clark,* for the defendant.

*By the Court,* PAIGE, P. J. The evidence shows a sufficient consideration for the mortgage. It was given to the plaintiff to secure him for his liabilities as indorser of the notes of James Whitcomb & Son. The possession by the plaintiff, of the indorsed notes, in connection with the testimony of James Whitcomb, was sufficient evidence that he had taken up and paid the notes. The case shows, therefore, that the mortgage was given for a valuable consideration, for a true debt; and the charge of the justice in relation to the consideration of the mortgage must be regarded as unobjectionable. It seems that the plaintiff commenced this suit against the defendant previous to the sale of the property in question by the defendant. The plaintiff having thus instituted legal proceedings to enforce his claim to the property, prior to the sale, his bidding at the sale and his omission to give notice, at the sale, that he claimed title to the property, did not estop him from setting up such claim in the suit which he had previously commenced against the defendant. The defendant having already been prosecuted by the plaintiff for taking the property, could not have been misled by the plaintiff's bidding for the property, and by his silence at the sale, in relation to his claim of title to it. To create an estoppel *in pais* a party must do an act or make an admission inconsistent with the claim he proposes to set up; and the other party must have acted upon the admission, and will be injured by allowing the truth of the admission to be disproved. The act or admission must have been expressly designed to influence the conduct of another, and must in fact have influenced such conduct. (*Dezell* v. *Odell,* 3 *Hill,* 222, *per Bronson, J. Welland Canal Co.* v. *Hathaway,* 8 *Wend.* 483, *per Nelson, Ch. J.*) In this case it can not be pretended that the defendant was in-

fluenced by either the acts or admissions of the plaintiff, to take
or sell the property in question. When he sold the property, he
had full knowledge that the plaintiff claimed title to it, and that
he was then enforcing that claim by an action previously com-
menced against himself. (4 *John.* 216.)

The charge of the justice in relation to the question of es-
toppel, was correct.

The plaintiff's mortgage was dated the 18th day of October,
1847, and was filed in the office of the county clerk on the 19th
of October, 1847. On the 16th of October, 1848, the plaintiff
caused an inventory of the property which he claimed was em-
braced by the mortgage, to be taken, and the property to be ad-
vertised for sale under the mortgage. Advertising the property
for sale under the power of sale contained in the mortgage, pre-
vious to the expiration of one year from the time of the filing
of the mortgage, in my judgment excused the plaintiff from the
obligation of filing a copy of the mortgage within 30 days pre-
vious to the expiration of the year, as required by the 3d sec-
tion of the act in relation to chattel mortgages. (*Laws of* 1833,
*p.* 402.) The 3d section of this act is evidently applicable only
to cases where the mortgagee allows the mortgagor to continue
in possession of the mortgaged property after the expiration
of the year, without taking the property into his own posses-
sion, or adopting some proceeding, to enforce the forfeiture of
the mortgage, or to sell the equity of redemption of the mort-
gagor, previous to the expiration of the year from the filing of
the mortgage. In my opinion the charge of the justice, that if
the plaintiff took possession of the property on the 16th of Oc-
tober, 1848, his omission to re-file the mortgage did not affect
its validity, was correct.

The justice charged the jury that the act of April 29, 1833,
in relation to chattel mortgages, allows the mortgagor to con-
tinue in possession of the property, where the mortgage is filed
as directed by that act. This part of the charge was in direct
conflict with the decision of the court of errors in *Smith* v. *Acker*,
(23 *Wend.* 658, 659, 666, 672,) and with the decision of the
supreme court in *Wood* v. *Lowry*, (17 *Wend.* 495.) In these

Otis *v.* Sill.

cases it was expressly held that the act of the 29th April, 1833, (*Laws of* 1833, *p.* 402,) did not repeal the statute concerning fraudulent conveyances; and that it only added another to the grounds on which a mortgage of personal chattels will be declared void. The object of the act was to create an additional official guard against fraud or collusion, by requiring the mortgage, or a copy thereof, to be filed. The filing of the mortgage does not rebut the presumption of fraud arising from the non-delivery of the property, or excuse the party who claims under the mortgage from affirmatively showing, where there is no change of possession, that the mortgage was made in good faith and without any intent to defraud creditors or purchasers. The only effect of the act is, to require the party, in addition to such proof, to show that the mortgage, or a copy thereof, has been filed. The justice, therefore, should have charged the jury that notwithstanding the filing of the mortgage, the plaintiff was bound to make it appear to the satisfaction of the jury, that the mortgage was made in good faith, and without any intent to defraud creditors or purchasers.

The only remaining question which I shall consider is, whether plaintiff's mortgage embraced the subsequently acquired of the mortgagors, of the character mentioned in the and whether the mortgage was a lien on such property when acquired, as against the creditors of the mortgagors. The mortgage professes to sell and assign to the plaintiff not only the scythes, iron, steel and coal then owned by the mortgagors, but also "all scythes, iron, steel and coal which may be purchased in lieu of the aforesaid property." The justice charged the jury that a mortgage upon property to be acquired subsequent to the execution of the mortgage, created a valid lien on the property when acquired, as between the parties, and was good as against third persons, if possession was taken of such property by the mortgagee, before the lien of such third person attached.

This question arose, before me, incidentally, in the case of *The Bank of Lansingburgh* v. *Crary*, (1 *Barb. Sup. Court Rep.* 551.) I then intimated an opinion that a chattel mort-

gage could only operate on property in actual existence at the time of its execution.) This question was carefully considered by the English court of common pleas in *Lane* v. *Thornton*, (1 *Man. Gran. & Scott*, 379,) in 1845. That court came to the conclusion that a grant of goods which are not in existence, or which do not belong to the grantor at the time of the execution of the deed, is void unless the grantor ratifies the grant, by some act done by him with that view after he has acquired the property in the goods. In that case the plaintiff had by a deed poll, in consideration of money lent to him by the defendant, bargained and sold to the defendant all his goods, household furniture, &c. then remaining and being, or which should at any time thereafter remain, and be in his dwelling house, &c. The defendant, under this assignment, had seized certain goods which were acquired by the plaintiff after the execution of the deed poll, and the plaintiff had brought trover against him for the same. The court ruled that the action would lie, as no property in the goods passed to the defendant. Tindall, C. J. held, upon the authority of Bacon's Maxims (*Reg.* 14,) of Perkins, (*tit. Grants,* § 65,) and of the case of *Grantham* v. *Hawley*, (*Hob. Rep.* 132,) that a disposition of after acquired property was inoperative; but that such disposition might be considered as a declaration precedent, which derives its effect from some new act or conveyance of the party after the property is acquired. And Tindall, C. J. also held that this new act must be an act done by the grantor for the avowed object and with the view of carrying the former grant or disposition into effect, and that the simple acquisition of the property at a subsequent time, and bringing it on to the premises, was not such a new act as, under the rule, gave the precedent declaration its effect. Perkins (*tit. Grants,* § 65) says, "A man can not grant or charge that which he hath not." And in ) *Grantham* v. *Hawley*, (*Hob. Rep.* 132,) it is said by the court that "a man can not grant all the wool that shall grow upon his sheep that he shall buy hereafter; for there he hath it neither actually nor potentially." But Perkins says (*tit. Grants,* § 90,) "that if a man grants unto me all the wool of his sheep for

Otis *v.* Sill.

seven years, the grant is good." By which is meant the wool of the sheep which the grantor at that time has. A distinction is thus recognized between a grant of an interest in property which at the time of the grant belongs to the grantor, and an interest in future property which does not then belong to him, but which he may thereafter acquire. The former grant is valid; but the latter is void. These authorities show that chattels neither actually nor potentially owned by the grantor, at the time of the grant, can not pass by such grant. (*See also Shep. Touch. tit. Grant, p.* 241; 2 *Roll. Abr.* 48, *tit. Grants*, ( *W.*) *pl.* 4, 5, *Fitz. Abr. tit. Grant, pl.* 65, *tit. Jur. pl.* 43.) The authorities all agree as to this doctrine. In *Mucklon* v. *Mangler*, (1 *Taunton*, 318,) the English common pleas decided that if a person contracts with another for a chattel which is not in existence at the time of the contract, though he pays the whole value in advance, and the other proceeds to execute the order, the buyer acquires no property in the chattel until it is finished and delivered. In *Bac. Abr.* (*tit. Grants, D.* 2,) it is laid down as a general rule, that a man can not grant or charge that which he hath not. And Bacon says, "if a man grant a rent charge out of the manor of Dale, and in truth he hath not any thing in the manor of Dale, and afterwards he purchase the manor of Dale, yet he shall hold it discharged." (*Perkins, tit. Grant.* § 65. *Fremoult* v. *Dedire*, 1 *P. Wms.* 429. *Fonb. Eq.* book 1, *ch.* 4, § 2, *pp.* 215, 216 *and notes* (*i*) *and* (*k*.) *Yelverton* v. *Yelverton, Cro. Eliz.* 401. *Gilbert on Uses, &c.* 116, 117. *Jones* v. *Roe*, 3 *Term Rep.* 88.)

The mortgage under which the plaintiff in this case claims was, as to the property which should be subsequently purchased, void for uncertainty. (*Com. Dig. D. E.* 14.) A mortgage of a building, " and also of such tools and other property as was then contemplated to be placed in the building," with a covenant that the instrument should be effectual to create a lien on such property, was held by the supreme court of Massachusetts not to create a lien on the property, afterwards placed in the building, and to be void for uncertainty. (*Winslow* v. *The Merchants' Ins. Co.*, 4 *Metc.* 306.) Shaw, C. J. in that case says,

"Articles contemplated to be placed in the building, though then in existence, without any schedule, enumeration, or specification whatever, is, as a description, far too indefinite and uncertain to constitute a lien upon the articles afterwards placed in the building."

It seems that though a grant of after-acquired property may, according to Lord Bacon, be considered as a declaration precedent; yet such declaration is countermandable. He draws a distinction between grants and declarations, and says that grants are never countermandable, but that declarations are countermandable in their natures. (*Bac. Maxims, Reg.* 14.) The new act which Bacon relies upon to give effect to the precedent declaration, would seem to be a conveyance, or something equivalent thereto. He says, "There must be some new act or conveyance to give life or vigor to the declaration precedent." This imports something more than a simple acquisition of the property, at a subsequent time. And the examples put by him, show that the new act must be a conveyance, or something equivalent. This is the view taken of this question in the treatise of equity, and in the notes thereto, by Mr. Fonblanque. And from the observations and illustrations in that work it is to be inferred that the new act or conveyance which is to give effect to the declaration precedent, must be specified in the instrument containing such declaration. It is said in the Treatise of Equity, "If I covenant with my son, in consideration of natural love, to stand seised to his use of the lands which I shall after purchase, yet the use is void: the reason is, because there is no new act, to perfect this beginning, and I had nothing at the time of the covenant." And Fonblanque in his note states that such a convenant is void both at law and in equity, unless there be some new act to be done. (*Fonb. book* 1, *ch.* 4, § 2, *p.* 216, *note* (*K.*) *Yelverton* v. *Yelverton, Cro. Eliz.* 401, 402. *Roll. Abr.* 790. *Gil. Uses,* 116, 117.)

It was contended on the argument, by the counsel of the plaintiff, that the mortgage in this case, as to the property to be acquired *in futuro*, was good in equity; and it was insisted that it was a valid equitable assignment as to such property,

Otis *v.* Sill.

and created an equitable lien on the property as soon as it was acquired, and that when the plaintiff took possession he also acquired the legal title to the same. ( In support of this proposition he cited the case of *Mitchell, assignee, &c.* v. *Winslow, &c.* in the circuit court of the United States, decided by Justice Story in 1843. (*Law Rep. Dec.* 1843.) In that case two manufacturers of cutlery in 1839 borrowed a sum of money payable in four years, and executed and delivered to the lender, to secure the payment of the money borrowed, a mortgage on all the machinery in their manufactory, with all the tools and implements thereunto appertaining, together with all the tools and machinery for the use of the manufactory which they might at any time purchase for four years from that time; and also all the stock which they might manufacture or purchase during the four years. The mortgagee, on the 16th July, 1842, took possession under his mortgage, of the property, &c. including machinery, tools and stock in trade purchased after the execution of the mortgage. In August 1842 the mortgagors filed their petition to be declared bankrupts, and were subsequently so declared, and an assignee in bankruptcy was appointed. The assignee in bankruptcy afterwards filed a petition in the district court of the United States, asking permission to take possession of the mortgaged property. Justice Story decided that the mortgage, as to the subsequently acquired property, was void at law but good in equity. He says "that to make a grant or assignment valid at law, the thing which is the subject of it must have an existence, actual or potential, at the time of the grant or assignment, and that a mere possibility is not assignable," but that courts of equity support assignments of contingent interests and expectancies, and also of things which have no present actual or potential existence, but rest in mere possibility only. He says in respect to the latter "it is true that the assignment can have no positive operation to transfer *in præsenti* property in things not in esse; but it operates by way of present contract to take effect and attach to the things assigned, when and as soon as they come in esse; and it may be enforced as such a contract in rem, in equity." And he says "it is a

---

---

clear result of all the authorities, that whenever the parties by their contract intend to create a positive lien or charge either upon real or personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily, or with notice, or in bankruptcy." Justice Story places his decision on the cases of *Wright* v. *Wright,* (1 *Ves.* 409, 411 ;) *Beckly* v. *Newland,* (2 *P. Wms.* 182 ;) *Hobson* v. *Trevor,* (*Id.* 191 ;) *Carleton* v. *Leighton,* (3 *Meriv.* 667 ;) *Lord Durseley* v. *Fitzhardinge,* (6 *Ves.* 260, 261 ;) *In Re Ship Warre,* (8 *Price,* 269, *note ;*) *Curtis* v. *Auber,* (1 *Jac. & W.* 506, 512 ;) *Douglass* v. *Russell,* (4 *Sim.* 524 ; *S. C.* 1 *Mylne & Keen,* 488 ;) and *Langton* v. *Horton,* (1 *Hare,* 540, *V. C. Wigram.*)

The cases of *Curtis* v. *Auber* and *Douglass* v. *Russell* were cases of assignment of the future freight or earnings of a ship owned, at the time of the execution of the assignment, by the assignor. *In Re Ship Warre* Lord Eldon conceded that the freight of a future voyage of a ship then owned by the assignor could be the subject of an equitable agreement, if the effect of the assignment was not to separate forever the freight and earnings from the ship itself. The case of *Beckley* v. *Newland* was a case of a covenant between two husbands who married sisters, to divide whatever should be left to their wives by their father. *Hobson* v. *Trevor* was a case of an agreement, on marriage, to settle lands which should come to the party by descent or devise. In *Lord Durseley* v. *Fitzhardinge Berkley,* (6 *Ves.* 260, 261,) in 1801, Lord Eldon concedes that an heir or next of kin might enter into a contract with respect to their expectations and possibilities. But in *Carleton* v. *Leighton,* (3 *Meriv.* 667,) in 1817, he held that the expectancy of an heir presumptive or apparent, was not an interest or a possibility, nor was capable of being made the subject of an assignment or contract. In *Wright* v. *Wright,* (1 *Ves.* 409, 411,) Lord Hardwick recognized the doctrine that a contingent interest, or pos-

sibility of an inheritance could be assigned. In *Langton* v. *Horton*, (1 *Hare*, 540,) V. C. Wigram held that a mortgage of a whale ship, and all oil and other cargo which might be caught and brought home in the ship from the then present voyage, was good as to the future cargo obtained in the voyage after the mortgage, and was entitled to a preference against an execution creditor of the mortgagor. This decision by V. Ch. Wigram was made upon the authority of the cases of *Ship Warre,* (8 *Price*, 269, *n*.) and of *Curtis* v. *Auber*, (1 *Jac. & W.* 526.)

All these cases were cases in equity. At law it is conceded that a grant or mortgage of property to be acquired *in futuro* is void. Justice Story admits this to be the rule at law. In *Jones* v. *Roe*, (3 *T. R.* 88,) Lord Kenyon, C. J. held that the contract of an heir dealing in respect of his hope of succession was a void contract. In *Robinson* v. *McDonnell*, (5 *Maule & Sel.* 228,) it was decided that the future earnings of a ship were not assignable. In that case the assignment was of all the earnings of future voyages. In *Leslie* v. *Guthrie*, (1 *Bing. N. C.* 697,) however, an assignment of the earnings of one intended voyage, was sustained as against the claim of the assignees in bankruptcy of the assignor. That case was distinguished from *Robinson* v. *McDonnell*, (5 *M. & S.* 228,) in which, if the assignment had been sustained, the ship and its earnings would have been forever separated.

But if an assignment of property to be acquired *in futuro* is valid in equity, it is only valid as a contract to assign when the property shall be acquired, not as an assignment of a present interest in the property; and if it is enforced in equity it can only be enforced as a right under the contract, and not as a trust attached to the property. (*Story Eq. Jur.* § 1040 *b.* and note 4, 5, *and note* 1. *Stokes* v. *Holden*, 1 *Keen*, 152, 153. *Purden* v. *Jackson*, 1 *Russ.* 1, 26, 44, 45, 7, 50. *Carleton* v. *Leighton*, 3 *Meriv.* 667, 672.) Story lays it down as a general rule that a mere naked possibility or expectancy can not be made the subject of a mortgage. (*Story's Eq. Jur.* § 1021.) He cites in his notes in support of this proposition, 4 *Kent's Com.* 144, § 58; *Carleton* v. *Leighton*, (3 *Meriv.* 667;) 1 *Pow. on*

*Mort.* 17, 18, 23, *and note, Coventry & Rand's ed.* Kent says that a mere expectancy as heir is a naked possibility, and not an interest capable of being made the subject of a contract. And he cites in support of this proposition the case of *Carleton* v. *Leighton.* (*See* 4 *Kent's Com.* 144.) The conveyance of the expectancy of an heir, or a mere possibility, if under any circumstances valid, can only be good by way of contract to be enforced when the estate descends to the heir, or comes into possession, and can then only be enforced as a mere right under the contract, and not as an interest in the property or as a specific lien thereon. (*Story's Eq. Jur.* § 1040 *b, note* 1. 3 *Meriv.* 667, *per Lord Eldon.*) In *Mestaer* v. *Gillespie* (11 *Ves.* 635,) Lord Eldon expressly held that an absolute assignment of the future freight of a ship was nothing but an agreement in equity.

If an assignment or mortgage of subsequently acquired property may be regarded in equity as amounting to a contract to assign or mortgage the property when it shall be acquired, the question arises whether such implied contract will create a specific lien on the property as soon as the property is acquired, as against the creditors of the assignor or mortgagor. I think the distinction stated by Mr. Fonblanque as prevailing in a settlement of lands is applicable to this question. Mr. Fonblanque says that a covenant to settle or convey particular lands will in equity, if for a valuable consideration, be deemed a specific lien on the lands, and decreed against all persons claiming under the covenantor; except purchasers for a valuable consideration and without notice of such covenant. But a general covenant to settle lands of a certain value, without mentioning any lands in particular, will not create a specific lien on any of the lands of the covenantor, and therefore can not be specifically decreed in equity; and the covenantee can only come in as a creditor in general. (*Fonb. Eq. B.* 1, *ch.* 5, § 7, *notes d. and c. p.* 367. *Fremoult* v. *Dedire,* 1 *P. Wms.* 430, 282. 4 *Bro. Ch. Rep.* 462.) It is also said in the text that a special covenant to settle lands binds the conscience only, and not the land. (*Fonb. Eq. B.* 1. *ch.* 5, § 7, *p.* 367.) In *Williams* v. *Lucas,* (3 *Cox's*

Otis *v.* Sill.

*Cases,* 160,) a person had borrowed money and promised to give the lender a mortgage on lands when required. The borrower had at the time an advowson, but no lands. It was held that the lender was only a simple contract creditor, and that his debt was not a lien on the advowson. And Story, in his treatise on equity jurisprudence (§ 1249) says it may be considered as a general, though not as a universal rule, that a covenant by a settler to convey and settle lands (not specifying any in particular,) will not constitute a specific lien on his lands, and so the covenantee will be deemed a creditor by specialty only. A distinction exists between a covenant imposing a present actual charge upon estates, and a covenant that the party will at some future time charge his estate. In the former case a specific lien attaches ; in the latter the covenant is personal only. (*Legard* v. *Hodges,* 1 *Ves. jun.* 478, *note, Summer's ed. Falknser* v. *O'Brien,* 2 *Ball & Beat.* 223. *Fremoult* v. *Dedire,* 1 *P. Wms.* 422. *Williams* v. *Lucas,* 2 *Cox,* 160.) In *Fremoult* v. *Dedire* Lord Chancellor Parker held that a covenant by a husband, before marriage, to settle lands of a certain value per annum on his wife, without mentioning any lands in particular, was not a specific lien on the lands of the husband, and that the wife could only come in as a general creditor.

In the case before the court, the mortgage, as to the subsequently acquired property, does not mention any scythes, iron, steel, or coal in particular, but it refers generally to all scythes, &c. which may be subsequently purchased by the mortgagors. The mortgage could not, therefore, according to the authorities, become a specific lien on the subsequently acquired property, when the mortgagors acquired the same, as against such mortgagors and all persons claiming under them. The mortgage, as to such subsequently acquired property, can only be regarded as a mere contract to give a further mortgage on such property, binding on the mortgagors personally. And the only remedy of the mortgagee, on such contract, is as a general creditor. This is the conclusion to which Chief Justice Shaw came in the case of *Winslow* v. *The Merchants' Ins. Co.* (4 *Metc.* 316.) That learned judge held that the express covenant in the mortgage,

Otis *v.* Sill.

in that case, to execute a further instrument of hypothecation, when the articles should be put into the building and thus made certain, was good only as an executory contract, and binding upon the covenantor personally, and for a breach of which he was liable in damages, but was not an executed contract constituting a lien *de facto* upon articles not then covered by the mortgage.

I am convinced that Justice Story came to an erroneous conclusion in the case of *Mitchell, assignee,* v. *Winslow,* &c. on the question of specific lien. I entertain for that learned jurist the most profound respect, and I should not have presumed to differ with him in opinion had I not found the weight of judicial authority opposed to his decision.

The case of *Rogers* v. *Hosack's Ex'rs,* (18 *Wend.* 319,) is an authority to show that the implied contract of the Whitcombs to mortgage to the plaintiff their subsequently acquired property, did not create a specific lien on the propety when acquired. In that case the court of errors decided (reversing the decision of the chancellor,) that a covenant by a debtor to pay certain debts owing by him, out of a designated fund when the same should be received by him, did not amount to an equitable mortgage or assignment of the fund, so as to give the creditors a specific lien thereon, but was a mere personal covenant to pay over the fund when received by the covenantor.

In the present case there was at most only an implied contract to execute a mortgage as a security for the payment of a precedent debt, upon property to be acquired *in futuro.* In the case of *Rogers* v. *Hosack's Ex'rs* there was an express covenant to pay certain debts out of a designated fund when the same should be received. If in the latter case the covenant was personal merely, in the former the contract can not be any thing more than a personal contract.

An agreement to execute a mortgage on particular lands described in the agreement, is doubtless in equity a specific lien on the land, and will be preferred to subsequent judgment creditors. (1 *Paige,* 128; 2 *Id.* 266.) At law, a judgment is a general lien upon all the legal interest of the debtor in his real es-

tate; but in chancery that general lien is controlled by equity, so as to protect the rights of those who are entitled to an equitable interest in the lands or in the proceeds thereof. (*Matter of Howe*, 1 *Paige* 128. *White* v. *Carpenter*, 2 *Id.* 266.) These cases, and those referred to by the chancellor in his opinions delivered therein, were cases where the agreement for a mortgage designated the lands to be mortgaged, or where the prior equitable interests were interests in certain particular lands. They therefore can have no application to the case before the court.

I have come to the conclusion, as the result of all the authorities, that if the mortgage in this case did amount to a contract to execute a further mortgage on subsequently acquired property, it was good as an executory contract only, and did not constitute a lien on the articles of the kind mentioned therein, when subsequently purchased, and that the only remedy of the plaintiff was an action to recover damages for a breach of the contract, or on the note accompanying the mortgage, to recover the balance remaining due thereon after applying in payment the proceeds of the sale of the goods bound by the mortgage.

The mortgage is in terms a mortgage *in præsenti*. It certainly could not take effect at the time of its execution, on property not then in existence or not belonging to the mortgagors. If a man may grant all the goods which may come into his possession within a limited time, he may grant all the personal property which he may acquire during his whole life. Such an absurd grant certainly ought not to be sustained.

If the plaintiff had an equitable right to compel the mortgagors to specifically perform the implied contract to give him a further mortgage on the subsequently acquired property, I apprehend that he did not take the proper steps to enforce that right. The legal title to the property in question being in the Whitcombs, the defendant had a right to seize and sell the property on the execution he held against them; and on that sale whatever right or interest they had in the property would pass to the purchasers. And as between the plaintiff and the purchasers, the plaintiff, by bidding on the property, at the sale,

Otis *v.* Sill.

and omitting to give the bidders notice of his claim to the property, is estopped from setting up, as against them, a right to a specific performance of the contract to give a mortgage on the articles purchased by them. His act of bidding at the sale, and his omission to give notice of his claim, must necessarily have influenced the purchasers in bidding for the property, as there is no evidence that they had any knowledge of the suit he had commenced against the defendant. The plaintiff, as respects the purchasers, would also be estopped, upon a familiar principle of equity, that where one is silent when conscience commands him to speak, he will not be permitted to speak when conscience requires him to be silent. The plaintiff therefore has, in this view of the case, lost his right of action, as to the subsequently acquired property, against both the sheriff and the purchasers at the sale. If the plaintiff had a right to a specific performance, he should have filed a complaint in the nature of a bill in equity, against the sheriff and the Whitcombs, previous to the sale, and should have caused the sale to be enjoined, and asked for the relief to which he was entitled.

I entertain doubts whether the plaintiff is entitled to any relief, as to the subsequently acquired property, in this action. Under the decision of Justice Story, if he has a specific lien his only remedy is in equity. The mortgage, as to the subsequently acquired property, is void at law. The plaintiff's complaint is what under the old system, would have been a declaration in replevin. His action is therefore an action at law, which involves only the legal rights of the parties. Although the code has abolished the distinction between actions at law and suits in equity, and provides that there shall hereafter be but one form of action, it does not necessarily follow that the principles of law and equity are to be administered in the same action, and that a complaint may demand both legal and equitable relief; or that to a complaint setting up a legal claim the defendant may interpose a purely equitable defence.

I think the plaintiff's case is also defective in not showing that he took actual possession of the property in question, previous to the levy of the defendant. Neither the property in the

barn nor that in the shop was removed. The barn was in the
possession of James Whitcomb, when he left Watertown in
August, 1848. He left the business of the firm to be managed
by his son Abel Whitcomb. The legitimate deduction from this
evidence is that the barn, and the scythes deposited in it, were
in the possession of Abel in behalf of the firm. There is no
evidence that the lease was taken in the name of James Whit-
comb, for the firm of James Whitcomb and Son, and with ex-
press reference to their partnership business. If the lease was
not taken by James Whitcomb expressly for the partnership
which commenced at the date of the lease, then it did not be-
long to the partnership, and the parol evidence that it was exe-
cuted for the benefit of himself and son, was inadmissible. For
by that evidence it was sought to create a trust in real estate in
favor of Abel Whitcomb, by parol, which is prohibited by the
statute of frauds. (2 *R. S.* 135, § 6.) If the lease did not be-
long to the partnership, then Abel had no power or authority,
as a partner, to assign it. And as he had no authority either
written or parol, from James Whitcomb, to make the assignment,
his assignment to the plaintiff was a nullity. (*Story on Part.*
§ 94, *note* 2, § 98.) And it may be questioned, as this is an ac-
tion on the law side of the court, involving only the legal title
to the property in question, whether, if the lease of the shop was
originally taken for the partnership, it would be proper to receive
parol evidence to show that James Whitcomb, the lessee, held
the lease as trustee only of the partnership, and of all those who
are interested in the partnership funds, (2 *Barb. Ch. Rep.*
199. *Story on Part.* §§ 98, 93,) partnership creditors as well as
partners. If the assignment to the plaintiff was void, then the
plaintiff had not even the constructive possession of the shop.
But if the assignment was valid, there does not appear to have
been any actual change of the possession. Abel Whitcomb was
allowed to remain in the actual possession of the shop. He re-
tained the key, and although absent from the 16th to the 24th
of October, he left a young man in charge of the shop. It has
been repeatedly decided that if an assignee or mortgagee leaves
goods assigned or mortgaged in the possession of the assignor

or mortgagor as his agent, this is not an actual change of possession, within the meaning of the 5th section of the statute of frauds. (2 *R. S.* 136. 2 *Hill*, 628. 4 *Id.* 297.)

The assignment of the lease for the purpose of securing the pre-existing debt of the plaintiff against J. Whitcomb & Son, assigns to him all the stock of every kind on hand in the shop. Abel Whitcomb, as one of the partners, had power to sell or mortgage the partnership goods in payment of, or as security for, a partnership debt. But this assignment must have taken effect as a mortgage; and as such it became void because it was not filed in the county clerk's office.

There was no delivery, nominal or otherwise, of the mortgaged property by Abel Whitcomb to the plaintiff's clerk. Abel Whitcomb accompanied him when he took the inventory, merely for the purpose of pointing the property out to him.

The justice who tried the cause, in my judgment, erred in charging the jury that a mortgage upon subsequently acquired property created a valid lien on the property when acquired, as against third persons, provided possession was taken of the property before the lien of such persons attached.

I think he also erred in charging that the jury might regard the assignment of the lease to the plaintiff as evidence of the actual possession of the property. There was no legal evidence in the case showing, or tending to show, that the plaintiff, either by himself or his agent, took actual possession of the mortgaged property previous to the levy; and the justice therefore erred in submitting that question at all to the jury.

The motion for a new trial must be granted.