## SUPREME COURT.

### SHUART agt. TAYLOR.

Where a cause was referred and tried before the referee, who made a report therein which was set aside by this court, and a new trial ordered, with costs to abide the event, without further directions, and the same referee tried the cause again, after objections thereto on the part of the defendant, *it was held* that he had power to do so, and that the objection was properly overruled.

A *report of a referee* will not be set aside as contrary to the evidence, unless there is a decided preponderance of evidence against it.

If a person who has, by agreement with the owner of land, an interest in a fallow, for the purpose of raising a crop of wheat—each to have one half—executes a chattel mortgage upon the fallow, the mortgage will bind the interest of the mortgagor in the fallow, and in the wheat afterwards put in under the agreement.

Where the owner of a chattel mortgage brought an action of trover, before the Code, for a sale of the mortgaged property, made without his assent, before the mortgage money had become due, and when he had not taken possession, *Held*, that the action would lie.

A mortgagee of a chattel has the entire legal title thereto, subject only to be defeated by a performance of the condition of the mortgage, and is entitled to the possession immediately, when there is no provision in the instrument that the possession may be retained by the mortgagor.

*Monroe Circuit and Special Term, January* 1852. This was an action of trover, brought in 1847, to recover the value of a quantity of wheat. The plea was the general issue. The cause was referred by consent to H. Humphrey Esq., sole referee, before whom it was tried, and who in March 1848, reported in favor of the defendant. A motion was made on the part of the plaintiff, to this court, to set aside the report, the decision of

which, as entered in the minutes of the clerk, was in these words: " New trial granted, costs to abide the event." The plaintiff noticed the cause for a second trial, before the same referee, in August 1851, and the parties by their counsel appeared before him, in pursuance of the notice, when the counsel for the defendant objected that the referee had not authority to try the cause again. The referee overruled the objection, and the parties proceeded to the second trial. It was proved, on the part of the plaintiff, that one Ezra T. Cogswell, on the 5th of September 1844, executed a promissory note for $75, payable to George W. Clark, or bearer, by the 1st day of October 1845, with interest; and that on the 17th of September 1844, Cogswell executed a chattel mortgage to Clark, as collateral security for the payment of the note, of all the right, title and interest of the mortgagor " in and to about thirty acres of fallow or wheat, on the farm of D. Tracy, better known as the Ezra Taylor farm, of the town of Pittsford," which mortgage contained a clause authorizing the mortgagee, in case of default in payment, at the time limited therefor, to take the property and sell the same, and out of the money to arise from the sale to pay and retain the amount of the debt and charges, he rendering the overplus to the mortgagor. The mortgage was filed in the town clerk's office in Pittsford, the same day. On the 18th of September 1844, Clark assigned the note and mortgage to the plaintiff. The other facts proved, so far as is necessary to an understanding of the points decided, are stated in the opinion of the court. The referee reported in favor of the plaintiff, for $112·26, October 22, 1851, and the defendant, upon a case made, moves to set the report aside.

S. B. JEWETT, *for Plaintiff.*

J. ABRAMS and H. R. JEROME, *for Defendant.*

T. R. STRONG, Justice.—The effect of the decision of the court, and the rule entered thereupon, setting aside the former report of the referee, and directing a new trial, was to place the cause in the same situation, in respect to a trial, it was in before it was first tried. The order of reference was not set aside, but remained in full force; and the duties and powers of the referee were precisely the same as if he had not previously reported.

Shuart agt. Taylor.

The objection made on the part of the defendant, to his retrying the cause, was therefore properly overruled.

In respect to all questions of fact in the cause, upon which the referee has passed, I must hold his report conclusive. There was some evidence tending to the conclusions to which he arrived, and no such decided preponderance of evidence against them, as to warrant this court in disturbing them (Durkee vs. Mott, 8 *Barb.* 423, 425, and cases referred to in note).

The chattel mortgage, under which, and an assignment thereof to him, the plaintiff claimed title, was upon the interest of Cogswell in the " fallow or wheat." What was that interest when the mortgage was given? According to the finding of the referee, the defendant on selling his farm had reserved to Cogswell, by parol, the right to sow the thirty acres, on which the wheat was raised, with wheat on shares, his share to be one half, and the purchaser of the farm to have the other half; he did sow the wheat, and when the crop was ripe, harvested it. Cogswell, as appears by the proof, at the time of the sale of the farm, was living on and had crops upon it; he had partly prepared the ground for the crop, and continued to live there until the spring after the wheat was put in. Upon this finding and proof, it is clear that Cogswell, at the time of giving the mortgage, had a right to the use of the thirty acres for the purpose of raising a crop of wheat, and having one half (Austin vs. Sawyer, 9 *Cow.* 39; Mott vs. Palmer, 1 *Comst.* 564). The owner of the farm, having permitted him to prepare the ground and sow the crop, was concluded from denying his right. Having such an interest, I see no good reason why the mortgage did not, upon its execution, become a lien upon it. The referee has found that part of the wheat was then sown; but however that fact may be, as the mortgage was upon the interest of Cogswell in the "*fallow*," I am of opinion it bound his right to the use of the land, and the wheat which was raised in the exercise of that right. This is not the case of a mortgage of property which the mortgagor did not own at the time, but one of a mortgage upon an interest in property which then belonged to the mortgagor (Otis vs. Sill, 8 *Barb.* 111, 112, and cases cited; Barnard vs. Eaton, 2 *Cushing*, 303; Codman vs. Freeman, 3 *id.* 306).

Regarding the mortgage as operative upon one half of the wheat, can the plaintiff maintain trover, for a sale of the crop after he became assignee of the mortgage, made without his assent, before the mortgage money became due, and when he had not taken possession? The conclusion to which I have arrived upon this question is, that the legal operation of the mortgage was to vest in the mortgagee the entire legal title to the property mortgaged, subject only to be defeated by a performance of the condition of the mortgage; that there being no provision in the instrument for the retaining of the possession of the property by the mortgagor for any time, the mortgagee had a right, by the instrument, to the immediate possession thereof, which right was acquired by the plaintiff by the assignment to him; and this right of present possession was sufficient to entitle him to sue in trover, for a conversion; and that such sale was a conversion (Mattison vs. Baucus, 1 *Comstock*, 295; Butler vs. Miller, *id.* 497; Lyon vs. Coburn, 1 *Cushing*, 278; Coles vs. Clark, 3 *id.* 399). In the case last cited, Chief Justice Shaw, in delivering the opinion of the court says: " We must take it as settled that a mortgage of a chattel, vests a property in the mortgagee; not an absolute title indeed, but a present title, defeasible upon a condition subsequent." And again: " Another consequence of this relation is, that as a general rule, the right of possession follows the right of property; and therefore, when there is no restraining stipulation, the mortgagee having the right of property, until defeated by the performance of the condition, has as an incident thereto the right of possession, and may therefore take the goods into his own custody, or maintain trespass or trover for them, against any one who takes or converts them to his own use." That case is also in point on the question of conversion.

The position taken by the counsel for the defendant, that the defendant was a tenant in common of the crop with the purchaser of the farm, and had a right to do what he did, is disproved by the report. The plaintiff, who under his mortgage had the legal title to Cogswell's share, was a tenant in common with the owner of the land, if such a tenancy existed in respect to the crop; and, in that view, the sale of the wheat by the lat-

ter, without the assent of the plaintiff, and with the assent of the defendant, who claimed title to the one half covered by the mortgage, and the receipt by the defendant of the avails of that half, was, as to the plaintiff, a conversion by the defendant.

Entertaining these views, I must deny the motion to set aside the report.