Milliman *v.* Neher.

--------•◄►•--------

## MILLIMAN *vs.* NEHER.

A chattel mortgage can only operate upon property in actual existence at the time of its execution. It cannot be given on the future products of land.

Thus where a lease was executed, in March, 1852, between the plaintiff and M., of a farm, for one year from the 1st of April then next, at a specified rent, and it was stipulated that the plaintiff should have a "lien upon the crops, as security for said rent," and that M. should "market the same;" *Held* that a person who had purchased from M. corn, raised upon the farm, with knowledge of the plaintiff's claim to a lien thereon, could hold the same, as against the plaintiff.

THIS action was commenced before a justice of the peace, to recover the value of a quantity of corn. On the trial the plaintiff read in evidence a lease dated March 25, 1852, executed by the plaintiff and one William Montgomery, by which lease the plaintiff leased to Montgomery a farm, for one year from April 1st then next, at an annual rent of $325. The last clause

of the lease was as follows : " *And said Milliman shall have the lien upon the crops as security for said rent, said Montgomery to market the same.*"

The plaintiff then proved that in the fall or winter of 1852, Montgomery sold to the defendant about 164 bushels of corn in the ear, for which the defendant gave his promissory note, and that the defendant knew of the plaintiff's claim, when he made the purchase.   Other facts were proved on the trial, but none having any important bearing upon the questions considered in the case.

The justice gave judgment for the plaintiff, which the county court reversed; whereupon an appeal was taken to this court.

*C. R. Ingalls*, for the appellant.

*J. W. Crane* and *H. W. Merrill*, for the respondent.

*By the Court*, Bockes, J.   The lease purports to have been executed and delivered on the 24th of March, and the term was to commence on the 1st day of April following.   When the supposed lien was created, therefore, Montgomery had only a lease of the farm *in presenti*, to commence on a future day.   The crops then had no existence, nor was it certain that they ever would exist.   In *Barnard* v. *Eaton*, (2 *Cush.* 295,) it was decided that a mortgage could not apply to goods not in existence, or not capable of being identified at the time of its execution ; and Justice Shaw, in giving the opinion of the court remarked, that the mortgage was an executed contract ; a present transfer of title, although conditional and defeasible : it could therefore only bind and affect property existing and capable of being identified at the time it was made.   See also *Jones* v. *Richardson*, (10 *Metc.* 481 ;) *Winslow* v. *Merchants' Ins. Co.*, (4 *id.* 307 ;) *Codman* v. *Freeman*, (3 *Cush.* 306.)   In the *Bank of Lansingburgh* v. *Crary*, (1 *Barb. S. C. R.* 542, 551,) Justice Paige intimates the opinion that a chattel mortgage can only operate on property in actual existence at the time of its execution, and cannot be given on the future products of real estate.   The same learned

Milliman *v.* Neher.

judge afterwards considered the question in *Otis* v. *Sill,* (8 *Barb.* 102 ;) and it was there held that a grant or mortgage of property not then in existence was void in law.

The case of *Munsell* v. *Carew,* (2 *Cush.* 50,) is directly in point. Munsell leased the half of his farm to Buckland, for a year, at the rent of $60, and it was provided in the lease that in case of refusal or neglect to pay the rent Munsell was to have all the crops which might or should grow on the farm, to dispose of as he should see fit. Carew, well knowing the contents of the lease, took title to some of the crops from Buckland, and refused to deliver the same to Munsell, on demand. In an action of trover by Munsell against Carew, it was held that until delivery of the crops to Munsell, or until possession thereof was taken by him, they remained the property of Buckland, and might be sold by him or attached by creditors.

We are referred to *Shuart* v. *Taylor,* (7 *How. Pr. R.* 251,) as a case favorable to the plaintiff's recovery. In that case one Cogswell executed a mortgage to Clark of his right, title and interest in and to about thirty acres of fallow or wheat. His interest was the use of the fallow then in his possession, with the right to sow it to wheat, on shares ; and part of the fallow was then sowed. Justice Strong held that the mortgage was operative on the property described in it, and remarked that "as the mortgage was upon the interest of Cogswell in the *fallow,* I am of the opinion it bound his right to the use of the land, and the wheat which was raised in the exercise of that right." And he further stated that "this was not the case of a mortgage of property which the mortgagor did not own at the time, but one of a mortgage upon an interest in property which then belonged to the mortgagor."

It cannot be pretended, in the case under consideration, that Montgomery mortgaged, or intended to mortgage, "his right to the use of the land ;" hence, the wide difference between this case and the one cited. Trees, grass, and corn growing and standing upon the ground, fruit upon trees, and wool upon the sheep's back, may be mortgaged. (*Shep. Touch.* 241, *title Grant.*) So also, a man may grant all the wool of his sheep

for seven years, but this grant is upheld on the ground that the wool is deemed to be continually growing; hence the grantor has at the time, if not an actual, a potential ownership and possession of the property granted. There are cases in which sales and conveyances of future freight or earnings of ships, and of grants of estates in expectancy, have been sustained; but those were cases in equity. This is an action at law; and the plaintiff's right to recover depends upon his ability to show a legal title to the corn. To support his action the clause in the lease must amount to a sale, a mortgage or a pledge of the crops. They were not pledged, because they were never delivered. Delivery is essential to constitute a pledge. (*Brownell* v. *Hawkins*, 4 *Barb*. 491.) A mortgage of goods is in some cases valid without delivery, but not so a pledge. (*Per Kent, J., Cortelyou* v. *Lansing*, 2 *Caines' Cas.* 200. *Wilson* v. *Little*, 2 *Coms.* 443. *Story on Bailment*, § 287.)

There was no sale or mortgage of the crops, for the reason that they had no existence when the instrument was executed and delivered. Besides, I am of the opinion that the terms used, that the plaintiff should have a "*lien on the crops as security*," do not import a sale or mortgage. A mortgage is a conditional sale. This clause of the lease contains no words of sale, nor any from which a sale can be implied. (*Brownell* v. *Hawkins*, 4 *Barb*. 491.)

But there is still another view of the case, conclusive against the plaintiff's right of recovery.

Montgomery was "*to market*" the crops. The phrase *to market*, has a definite and well understood signification, and means *to sell*. Montgomery, therefore, had authority to sell the corn; and whether in his own right as principal and absolute owner, or as agent for the plaintiff, can make no difference. It was insisted, on the argument, that the authority to market the crops should be construed to mean, to sell the same subject to the plaintiff's lien; but that would be in effect to strike out of the lease the words conferring the power. Montgomery would have had the right to sell the crops subject to the plaintiff's lien, without any authority from him whatever. The par-

ties contracted for themselves, and no term, qualification or condition can be erased, or superadded, by the court.

It is insisted that this construction will totally defeat the lien. Better so than that a purchaser under the plaintiff's written authority should be compelled to pay twice for the same property. He cannot be permitted to invalidate a sale which he in plain terms authorized. But it does not follow that the plaintiff's rights under that clause of the lease are destroyed by this construction. He may have been entitled to relief in equity. As between the parties to the instrument, and in regard to the note given on the sale of the corn, certain rights would remain. If the clause in the lease giving the supposed lien had any legal efficacy, the plaintiff might have reached the note, in the hands of Montgomery. But this is not the place to discuss the plaintiff's extraordinary and equitable rights. In this action the examination must be confined to questions in regard to the legal title to the property in controversy. (*Otis* v. *Sill, supra,* 121.)

The cases are numerous in which the doctrine is held, that as between mortgagees and good faith purchasers or creditors of the mortgagor, an instrument which should allow the mortgagor to deal with the mortgaged property as his own would be void. (*Griswold* v. *Sheldon,* 4 *Coms.* 581, *and cases there cited in opinion of Brown, J.*) When the instrument creating the lien also confers on the mortgagor a right or power to sell the property mortgaged, the buyer should be protected as a purchaser in good faith. He is presumed to have purchased under the authority conferred by the instrument. (*Benson* v. *Bolles,* 8 *Wend.* 175.) Such an instrument would create no lien on the property, as against a purchaser or creditor.

The judgment of the county court must be affirmed.

[SCHENECTADY GENERAL TERM, May 7, 1855. *Bockes, C. L. Allen* and *James,* Justices.]