JACOB STOVER AND OTHERS, v. JACOB C. EYCLESHIMER, JOHN B. SHERMAN, AND OTHERS.

*Partition—Heir-at-law—Expectancy—Transfer.*

The expectancy of an heir is capable of being transferred as security for the payment of a just debt, and when the same is done during the lifetime of the ancestor, it will be deemed to be a transfer of all legal and equitable right of such heir's expectancy in the estate of such ancestor; and although there can be no vested estate in the property during the life of the ancestor, a Court of Equity will recognize and protect the interest of the transferee after the death of the ancestor.

BOCKES, J.—This is an appeal from the judgment of the General Term of the Supreme Court, affirming the judgment entered at Special Term, on the report of a referee.

The action was in partition. The decree declared the rights of the parties, directed a sale of the premises, and also distribution of the avails.

The decree was satisfactory in all respects, except as to the share of John L. D. Eycleshimer, which share was a subject of controversy between the Defendants, Jacob C. Eycleshimer and John B. Sherman. The former claimed such share as a judgment creditor of J. L. D. E., under attachment proceedings; the latter claimed as purchaser. By the judgment of the Supreme Court it was awarded to Mr. Sherman, the purchaser.

The facts on which these parties rested their claims were as follows: John P. Eycleshimer died intestate, June 10th, 1861, seized of the premises described in the complaint, leaving J. L. D. E. entitled, as heir-at-law, to share in his estate. Prior thereto, and in September, 1858, J. L. D. E. executed and delivered to Caroline M. Sherman an irrevocable power of attorney, coupled with an interest, to ask, demand, sue for, recover, and receive all such interest, estate, property, and effects, real and personal, as he then had, or at any time thereafter should have, as heir-at-law, devisee, legatee, or next of kin of his father, J. P. E., with power to sell, dispose of, and convey the same, and apply the proceeds

to the payment of a debt of $1,573 and interest, which said J. L. D. E. then owed to her. The instrument, under seal, was acknowledged March 2, 1859, and was recorded August 24th, 1861, in Rensselaer county, in which county the premises were situated. On the 12th day of September, 1861, Caroline M. Sherman executed and delivered to the Respondent, John B. Sherman, pursuant to said power of attorney, a conveyance of all the interest of said J. L. D. E. in his father's estate, and also all her interest, legal and equitable, therein. By virtue of these instruments, the Respondent Sherman claimed the share of J. L. D. E. in his father's estate, which interest was insufficient to satisfy the debt of $1,573 specified in the power of attorney.

The claim of the Appellant to the interest of J. L. D. E. arose as follows : On the 22d October, 1861, he recovered a judgment in the Supreme Court against J. L. D. E. for $1,021.61, in an action commenced August 6th, 1861, in which action, and on which day, a warrant of attachment was issued to the sheriff of Rensselaer county, who, on the same day, attached the interest of J. L. D. E. in his father's estate. Notice of pendency of the action was filed August 14, 1861.

The question then is, who had the better right—the Appellant, who claimed as an attaching and judgment creditor ; or the Respondent, who claimed as an equitable purchaser or assignee, holding the position of Caroline M. Sherman, whose rights he had acquired ?

In point of time the latter had the priority ; for at the decease of the intestate, June 10, 1861, Caroline M. Sherman held the instrument which was the basis of the Respondent's right. The warrant of attachment was not levied until August 6th thereafter. The question is, therefore, whether the instrument executed to Caroline M. Sherman took effect on the decease of the intestate, either as a legal or equitable transfer of the estate which descended to the heir-at-law.

It is undoubtedly true that J. L. D. Eycleshimer had no vested interest in his father's estate at the time he executed the instrument—only a bare possibility, which, of course, was not the subject.

of a grant, nor did the instrument contain a covenant which could
be made to operate as an estoppel. And it may, I think, be as-
sumed in this case, that the instrument did not effect an absolute
transfer of the legal title, and yet uphold the Respondent's claim.
If it was such an instrument as a Court of Equity would enforce
on the decease of the ancestor, it was effectual for the Respond-
ent's purpose. That it was such seems to me to be undeniable.
The plain object which the parties had in view was to transfer the
expectancy of an heir as a security for the payment of a just debt.
In Fonblanque's Equity (218) it is said that although a grant of a
possibility is not good in law, yet it may be assigned; and Judge
Story lays it down (§ 1040) that even the naked possibility or
expectancy of an heir to his ancestor's estate may become the sub-
ject of a contract of sale or settlement; and in such case, if made
bonâ fide, for valuable consideration, it will be enforced in equity
after the death of the ancestor—not, indeed, as a trust attaching to
the estate, but as a right of contract. So, too, it is laid down, in
Spence's Equitable Jurisdiction, that an expectancy or contingent
interest may be sold, and the Court of Chancery, after the event
has happened, will enforce the sale (2 vol. 865). It is true that
Judge Cowen remarks, in Munsell *v.* Lewis (4 Hill, 642), that he
was of the "opinion that a simple expectancy, in which the assignor
had no interest, and which is unpurchasable, can neither be as-
signed, nor would a contract for future assignment be valid."
And so Judge Willard has said in general terms that "a bare pos-
sibility of an uncertain interest is not assignable" (Will. Eq.
Jur. 461). These remarks, however, without qualification, can
hardly be deemed sound law at the present day; for in Field *v.*
The Mayor (6 N. Y. 179), it was held that "an assignment for a
valuable consideration of demands, having at the time no actual
existence, but which rest in expectancy merely, is valid in equity
as an agreement, and takes effect as an assignment when the de-
mands intended to be assigned are subsequently brought into ex-
istence." The learned Judge who gave expression to the views
of this Court in that case says: "There was indeed no present,
actual, potential existence of the thing to which the assignment

or grant related, and therefore it could not, and did not, operate eo instanti to pass the claim which was expected thereafter to accrue to Bell against the Corporation ; but it did, nevertheless, create an equity which would seize upon those claims as they should arise, and would continue so to operate until the object of the agreement was accomplished. On this principle an assignment of freight to be carried in future will be upheld and enforced against the party from whom it becomes due." And he adds : "Whatever doubts may have existed heretofore on this subject, the better opinion, I think, now is, that Courts of Equity will support assignments, not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them. Authorities may be found which seem to incline the other way, but which, upon examination, will be found to have been overruled, or to have turned upon the question of public policy." This decision by this Court seems directly in point, and is conclusive of the case before us on this appeal. It may be well, perhaps, here to refer to the decision in Milliman v. Neher (20 Barb. 37), and the cases there cited. It was there held that a chattel mortgage could only operate upon property in actual existence at the time of its execution. In that case the question arose in regard to the *legal title* to the property, and the decision should be construed with reference to that fact ; otherwise the case is in conflict with numerous later decisions, where it has been held that such mortgage would be enforced in equity whenever the property should be obtained, or should be brought into existence.

The instrument under which the Respondent claims was evidently intended to be, and by its tenor was, more than a mere power of attorney. It was intended to vest in Miss Sherman an interest in the property as a security for the payment of J. L. D. Eycleshimer's debt to her. With other rights conferred on her thereby, she was to receive the proceeds and avails of the property, " and of all my interest and estate therein, *and all my estate, property, and effects aforesaid,* and apply the same respectively

to the payment and discharge of the ". debt which, he therein declared, he justly owed her. Now, here was a clear appropriation by J. L. D. E. of his expectations as heir-at-law in his father's estate—in effect a transfer thereof as security—equivalent, in all essentials, to a mortgage, in exact and legal phrase.

The instrument could undoubtedly have been enforced against J. L. D. E., on his father's decease, according to its plain import and purpose. He could not have resisted its just effect as a claim or lien on the property. If not, it follows, of course, that his creditor could not acquire a superior right, either by attachment or other proceeding. A creditor could only obtain his position and rights.

It is objected that the consideration of the instrument was a pendent debt, and, consequently, that Miss Sherman could not have insisted on her equity against the claims of an attaching and judgment creditor.

It is not suggested that the debt was not a just one, nor is it intimated that the instrument was not given in entire good faith. Regarding the instrument as an equitable security for the satisfaction of a just debt, the consideration was abundant and bonâ fide. This precise point was considered by Judge Selden in Seymour *v.* Wilson (19 N. Y. 417, 421). The learned Judge there shows that a transfer directly to a creditor, in payment of, or as security for, an honest debt, in the absence of meditated fraud, is good against the claims of both existing and future creditors of the vendor. He says : " It is not necessary in such a case that the vendee, in order to protect himself from a claim by the other creditors, should show any new consideration paid." He adds : " There is no doubt that the debt paid *or secured* by the transfer must, in such case, be regarded as a valuable consideration within the section which saves the rights of bonâ fide purchasers ; so that if the creditor acts in good faith, and for the mere purpose of obtaining satisfaction of his own debt, in accepting the transfer, he will acquire a valid title. There being no equity prior to his own to be overcome, the necessity which calls for proof of a new consideration in other cases does not exist." The objection, that the

instrument is not supported by a valid consideration, is not well taken.

The case then comes to this, that Miss Sherman held, as security for the payment and satisfaction of a debt due her, a valid, equitable claim on the estate of J. L. D. Eycleshimer, which came to him by descent, on the decease of his father, intestate, June 10, 1861, which claim then became a vested right in her, capable of equitable enforcement; and that the Respondent in this appeal acquired her position and succeeded to her rights. The Appellant's proceedings and judgment were subsequent thereto, the warrant of attachment having been levied on the 6th August, 1861, and the judgment entered in October following. The claim of the Respondent to the fund in controversy was, therefore, paramount to that of the Appellant; and the judgment of the Supreme Court to that effect should be affirmed.

Affirmed, with costs.

JOEL TIFFANY,
State Reporter.