POLK *v.* FOSTER.

LIEN ON FUTURE CROP. *Sale of land. Mortgage. Deed of trust.* Where
the vendor of land retains a registered lien on the future crops for the
payment of the purchase money, and the title to the same is to be
absolute only when the conditions of the sale have been complied
with: *Held,* that his right to the crop, until the purchase money be
paid, is superior to that of beneficiaries under a trust conveyance
made subsequent to the registration of the lien to secure them in the
advancement of monies to his vendee.

Case cited: Tedford *v.* Wilson, 3 Head, 312.

### FROM SHELBY.

Appeal from the Chancery Court. W. H. SMITH,
Chancellor..

HARRIS, PILLOW, and STEPHENS for complainant.

JARNAGIN & FRAYSER for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

In December, 1869, L. E. Polk sold and conveyed
to G. B. Cooper a tract of land in Arkansas, on four
years credit, taking his notes, payable in four instal-
ments, and executing a deed, but expressly reserving
a lien on the land, and on the cotton to be raised
on the land for the three successive years. This con-
veyance was duly proven and registered in Arkansas,
and possession taken by Cooper.

In February, 1870, Cooper sold and conveyed the

Polk *v.* Foster.

land to Jno. W. Greer and J. W. Standifor for five hundred bales of cotton, to be paid in four instalments of 125 bales each year, making a conveyance of the land, but reserving a lien thereon, and on all the cotton to be raised on the land for four years to secure the payments.     This conveyance was registered in Arkansas in April, 1870.

Greer and Standifor took possession under this last-named conveyance, and in April and August, 1870, conveyed the land and cotton of 1870 to J. M. Ander-son to secure Foster, Kealhoffer and Co. for advances made and to be made for supplies with which to raise the crop.

Foster, Kealhoffer & Co., by themselves or agents, took possession of the cotton raised in 1870, as it was ginned and baled, and sent it to Memphis, where they sold it, and converted the proceeds to their own use. Upon these facts complainants Polk and Cooper file their bill against Foster, Kealhoffer & Co., claiming that they had a lien on the cotton so converted by them, and seeking a decree for the value of the cotton so sold by them.

The Chancellor sustained a demurrer to this bill, upon the ground, as we suppose, that Polk and Cooper had no such lien on the cotton by the laws of Arkansas as would entitle them to hold Foster, Keal-hoffer & Co. responsible for the conversion.

It is seen that an express lien is retained in the deed from Polk to Cooper, not only on the land, but on all the cotton to be raised for three years on the land.    And, also, that Cooper retains an express lien

in his deed to Greer and Standifor on the land, and the cotton to be raised for four years. These deeds were both registered before Foster, Kealhoffer & Co. took this deed of trust and mortgage from Greer and Standifor.

The determination of the questions arising in the case depends upon the proper understanding of the contracts as to the liens on the cotton to be raised contained in the deeds from Polk to Cooper, and from Cooper to Greer and Standifor. In the former, after retaining a lien on the land for the purchase money, the clause proceeds: "and a lien is also hereby retained upon the entire interest of the said Cooper, whatever it may be, in each crop raised by him upon said tract of land until said notes are paid." The deed was executed on the 29th of December, 1869, when there was no crop in the ground or growing. The evident purpose of the parties was to secure to Polk a lien on the future crops, under the belief that future crops could be mortgaged. While it is well settled that a growing crop may be sold or mortgaged, the weight of authorities is that future crops cannot be mortgaged, at least in such way as to make the registration of such mortgage effectual as against creditors or subsequent purchasers without notice: 2 Hilliard on Mortgages, 385; *Millineas* v. *Neher,* 20 Barb., 37.

But such a contract is valid and binding on the parties, and when properly executed and signed, may be enforced as between the parties, and as against creditors or purchasers with notice, even without regis-

tration. It was so held in *Tedford* v. *Wilson*, 3 Head, 312.

The evident intention of the parties was that what-ever cotton Cooper might raise on the land he would hold for Polk, subject to Polk's notes for the purchase money. This was one of the stipulations in the contract of sale, was based on a valuable consideration, and inserted in the deed as part of the contract. The acceptance of the deed, with this stipulation on it by Cooper, made it binding on him, although not signed by him, at least for one year. In New York, it is held that if a mortgage of future property is valid in equity, it is only as a contract to assign when the property is acquired. And if enforced in equity, it can only be as a right under the contract, not as a trust attached to the property: *Ottis* v. *Sill*, 8 Barb., 102. After the future property contemplated by the contract is acquired, and is in possession of the party to whom it is contracted to be mortgaged, such party will hold it against a creditor of the mortgagor: this is decided in *Tedford* v. *Wilson*, just referred to.

But in the present case Cooper raised no cotton himself. In February, 1870, he conveyed the land to Greer (who afterwards took Standifor in the contract), for which they were to pay each year, for five years, 125 bales of cotton, a lien being retained on the land by Cooper, and the right to re-enter in the event of Greer's failure to make any one payment—the first delivery of 125 bales to be on the 1st of January, 1871, and the conveyance to be void on failure to make any one of the payments, and any payments

already made to be forfeited. Then follows this clause: "it is hereby expressly agreed that a lien is hereby reserved in favor of Cooper on all the cotton that may be produced on the premises, for the term of four years following the date hereof, or, to insure said lien, none of the cotton shall be removed from said premises until the payments aforesaid shall be respectively made."

It is obvious that this contract was only a conditional sale of the land, to be absolute only upon the payments of the several instalments of cotton, and to be void on the failure to make any one of the payments. The legal effect of the stipulations of the contract was to constitute Greer the lessee of the premises for four years, at an annual rent of 125 bales of cotton, and upon the punctual payment of the several instalments the title of the land to be absolute in Greer.

This is distinctly manifested by the stipulation that all the cotton raised on the premises should be held by Greer, and not be removed until each instalment was paid. In regard to the cotton to be raised, Greer agreed to occupy the relation of agent, or lessee or trustee of Cooper. The crop, when being cultivated, and when matured and gathered, was to be in the possession of Greer for the benefit of Cooper.

As we have already seen, the contract as to the lien on the future crops could not be regarded as a mortgage, to be governed by our registration laws. It cannot, therefore, be held that the registration of the deed containing the stipulation as to the lien on

the future crops could operate as notice to creditors of and purchasers from Greer. But as Greer was in possession of the crop as the agent or trustee of Cooper, Cooper's right to have it appropriated could only be defeated by an innocent purchaser for value, without notice.

The controlling question in the case, therefore, is, whether Foster, Kealhoffer & Co. were innocent purchasers without notice? Their trust deed on the land is dated in April, 1870, and their mortgage on the growing crop in August, 1870. The trust deed is made to secure advances made and to be made, to the amount of $1,500—the mortgage to secure a note for $1,000, executed on the day of the date of the mortgage. The allegations in the bill are that as the deeds from Polk to Cooper and from Cooper to Greer were made and registered before the trust deed and mortgage of Greer and Standifor to Foster, Kealhoffer & Co., they were affected with notice, and could not be innocent purchasers. The allegations as to actual knowledge of the prior conveyances, if made at all, is only made inferentially, although one of the interrogatories calls on Foster, Kealhoffer & Co. to state whether they did not have such knowledge. Assuming that the bill intended to charge actual notice, as well as notice by registration, it follows that the demurrer was erroneously sustained.

The law imputes to a purchaser a knowledge of all facts relating to the same land appearing at the time of his purchase upon the muniments of title which it was necessary for him to inspect, in order to ascertain

the sufficiency of such title: 3 Wash. Real Prop., 292, and authorities cited.

The presumption, therefore, is that Foster, Kealhoffer & Co. inspected the deed from Polk to Cooper and from Cooper to Greer, and if so they were affected with knowledge of the stipulations therein as to the liens in favor of Cooper and Polk. With this presumption against Foster, Kealhoffer & Co. as innocent purchasers, the demurrer was erroneously sustained.

But one ground of demurrer is, that the several conveyances were made of lands in Arkansas, and that the contracts were to be executed in that State, and that by the laws of that State the liens sought to be secured by the deeds are invalid.

We cannot know, judicially, how the liens sought to be enforced by the bill are affected by the laws of Arkansas.

As far as we have examined the Arkansas authorities to which we have been referred, we find nothing different from the general principles of law in our own State in reference to the questions involved. But if there be such laws, they can be made available by answer or plea.

We are, therefore, of opinion that the demurrer was erroneously sustained. We reverse the decree and remand the cause for such further pleadings and proceedings as the parties may decree proper for the trial of the cause on its merits. The costs of the appeal will be paid by defendant.