JAMES McCAFFREY, Respondent, v. JAMES WOODIN, Appellant.

| 65 | 459 |
| 118 | 136 |
| 118 | 137 |
| 65 | 459 |
| 120 | 331 |
| 120 | 524 |
| 65 | 459 |
| 132 | 64 |
| 65 | 459 |
| 138 | 506 |
| 65 | 459 |
| 140 | 182 |
| 65 | 459 |
| 142 | 578 |
| 65 | 459 |
| 149 | 131 |

A lease of a farm contained a clause giving the lessor " a lien as security for the payment of the rent aforesaid on all goods, implements, stock, fixtures, tools and other personal property which may be put on said premises, and said lien to be enforced on the non-payment of the rent " by taking and sale, as in case of a chattel mortgage. In an action for the conversion of hay and the farm produce, and stock on the farm taken and sold by an agent of the lessor after default in payment of rent, *held,* that the action could not be sustained; that the clause was, in substance, a chattel mortgage, which, as against the lessee, so far as it purported to create a lien upon property, not in existence or not then acquired, while in law it might not pass title, yet gave the lessor a license to seize such property, and after such seizure the title passed; that, in equity, it transferred the beneficial interest without the intervention of any new act which attached immediately upon the coming into existence or the acquisition of the property; also, *held,* that the clause covered crops subsequently raised upon the farm.

*It seems,* that the license given by the clause, considering it in its legal aspect, is an irrevocable one.

*Otis* v. *Sill* (8 Barb., 102); *Gardner* v. *McEwen* (19 N. Y., 123); *Milliman* v. *Neher* (20 Barb., 376) distinguished.

*McCaffrey* v. *Woodin* (62 Barb., 316) reversed.

(Argued May 6, 1875; decided June term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a verdict. (Reported below, 62 Barb., 316.)

The nature of the action and the facts are sufficiently stated in the opinions.

*Joseph H. Stull* for the appellant. The court erred in holding that the covenant in the lease as to taking property on default in payment of rent was a mere license. (*Jamison* v. *Williamson,* 3 Duer, 255; *Babcock* v. *Utter,* 1 Keyes, 115; *Ex parte Coburn,* 1 Cow., 568; *Mumford* v. *Whitney,* 15 Wend., 380; *Tillotson* v. *Preston,* 7 J. R., 285; *Simpkins* v. *Rogers,* 15 Ill., 397; *Woodward* v. *Seeley,* 11 id., 157; *Wood* v. *Leadbitter,* 13 M. & W., 838, 844, 845; *Bryan* v. *Whistler,*

8 B. & C., 228; *Hewlins* v. *Shipman*, 5 id., 222; 13 M. & W., 845.) As between lessee and lessor, a chattel mortgage upon crops to be raised by the lessee on the premises is valid. (*Butt·* v. *Elliott*, 19 Wall., 544; *Conderman* v. *Smith*, 41 Barb., 404; *Andrew* v. *Newcomb*, 32 N. Y., 417; *Shuart* v. *Taylor*, 7 How. Pr., 251; *Van Hoosen* v. *Corey*, 34 Barb., 9.)

*Edward Harris* for the respondent. The lien clause in the lease was not a chattel mortgage. (*Milliman* v. *Neher*, 20 Barb., 37, 40; *Edyell* v. *Hart*, 5 Seld., 217; *Brownell* v. *Hawkins*, 4 Barb., 491.) If regarded as a chattel mortgage, it was absolutely void. (*Conderman* v. *Smith*, 41 Barb., 404; *Otis* v. *Sill*, 8 id., 11; *Morrill* v. *Noyes*, 3 Am. L. Reg. [N. S.], 23.) It was invalid, for any purpose, except that within some cases it might be deemed an executory contract for a lien as security for rent, not creating a specific lien, but to be enforced by an equitable action at law. (8 Am. L. Reg.[N. S.], 611; *Otis* v. *Sill*, 8 Barb., 111; *Van Hoosen* v. *Corey*, 34 id., 10.)

Dwight, C. This is an action of trover to recover certain farm stock, a quantity of hay and other farm produce, valued at $200. The defence is, that the defendant took the property by virtue of the following provision in a lease made by Catharine Beahan to the plaintiff, under which he held the farm upon which the crops were grown: "It is agreed that the said party of the first part shall have a lien as security for the payment of the rent aforesaid, on all goods, implements, stock, fixtures, tools and other personal property which may be put on said premises, and such lien to be enforced on the non-payment of the rent aforesaid, by the taking and sale of such property in the same manner as in cases of chattel mortgage on default thereof." The defendant acted as agent of Mrs. Beahan. The property was taken in default of the payment of rent due by the terms of the lease It was seized by the defendant on February 2, 1869. Notices of sale were put up, and the hay, oats, cornstalks and straw were sold at auction February 10, 1869, to make $100, balance of rent

accrued. Soon after the 1st of April, 1869, the two horses were advertised for sale, and sold at auction, to make the remaining installment of rent. The plaintiff forbade both sales. The judge, at the trial, refused to submit any question to the jury but that of damages.

The theory of the plaintiff is, that the clause in the lease already referred to amounted to no more than a license to take the goods, and that having forbidden the sale, the license was countermandable, and is at an end. In considering the rights of the parties, it will be proper to investigate the claims of the lessor, Mrs. Beahan, both in law and equity. If it should be found, on examination, that her right to seize and hold the property cannot be recognized in a court of law, still the defendant may, under the Code, urge any equitable defence which he may have to the plaintiff's action. (Code, § 150.)

I. The most satisfactory mode of considering Mrs. Beahan's right in law is, for the time being, to regard the clause in the lease as purporting to create a chattel mortgage upon property not in existence or not yet acquired. If it should be found to be a valid instrument in that respect, it would then be proper to ascertain whether the clause in question can be regarded as a chattel mortgage, or as equivalent to it.

It must be conceded that if such a transaction as the present had been entered into in the ordinary form of a mortgage, it would not have been an executed contract, but, rather, executory in its nature. An instrument considered as an assignment will not (at law) pass a title to chattels not in existence, or not in the ownership of the grantor, or not sufficiently appropriated at the time of the assignment. (2 Hilliard on Mortgages, p. 408, § 4.) If, however, the instrument be so framed as to give the mortgagee a power of seizing such future chattels of the grantor as they should be acquired by him and brought upon the premises, they will pass, after such seizure, where there is already a foundation of interest in the grantor. This is an old rule in the law, and rests, to some extent, upon a maxim stated by Lord Bacon, and quoted by Mr. Broom. The maxim is as follows: "*Licet*

*dispositio de interesse futuro sit inutilis, tamen potest fieri declaratio præcedere quæ sortiatur effectum, interveniente novo actu.*" Mr. Broom's rendering of this maxim is: " Though the grant of a future interest is invalid, yet a declaration precedent may be made which will take effect on the intervention of some new act." He subjoins an illustration of it, quite pertinent to the facts of the case at bar. He says: " For instance, a power contained in an indenture to seize future crops, if unexecuted, would be of no avail against an execution levied, as giving no equitable title to any specific crops, yet if the power be subsequently executed by the grantee taking possession of the then growing crops; the seizure will be good as against an execution afterwards levied, for the act done by the grantee is sufficient to give effect to the antecedent declaration." (Broom's Leg. Max., 440.) The only point to be criticised in this statement is that which sets forth that the assignee of future crops has no equitable title before taking possession. That point will be considered hereafter. But, considered as an enunciation of the rules governing courts of law, Mr. Broom's statement must be regarded as correct.

There is now an abundance of authority for this proposition to be found in *Congreve* v. *Evetts* (10 Exch., 298); *Carr* v. *Allatt* (3 Hurl. & Norm., 964); *Hope* v. *Haley* (5 Ell. & Black, 830); *Chedell* v. *Gadsworthy* (6 C. B. [N. S.], 471); *Baker* v. *Gray* (17 C. B., 462); *Moody* v. *Wright* (13 Metc., 29); *Chapman* v. *Weimar* (4 Ohio [N. S.], 481); *Chinewith* v. *Tenney* (10 Wisc, 397).

In *Congreve* v. *Evetts*, S. assigned, by indenture, his crops of grain upon his farm, as security for money lent. By the indenture it was declared and agreed that it should be lawful at any time to seize and take possession of the crops and other effects which should or might from time to time be substituted in lieu of the crops thereby assigned, or which should from time to time be found on or about the farm, and the same to sell or dispose of, and out of the proceeds to pay all costs and to retain all moneys due

to the plaintiff.   On the 21st of February, 1849, a sum of £1,297 being due, the plaintiff seized and took possession of some crops of grain then growing on the farm, and which had been sown by S. subsequently to the execution of the indenture.   The sheriff levied an execution the next ·day, selling the crops for a sum of money, which came into the hands of the defendants, and to recover which the plaintiff brought his action.   Parke, B., in delivering the judgment of the court, said : " If the authority given by the debtor by the bill of sale had not been executed, it would have been of no avail against the execution ; it gave no legal or even equitable title to any specific goods, but when executed to the extent of taking possession of the growing crops, it is the same, in our judgment, as if the debtor himself had put the plaintiff in actual possession of those crops.   Whether the debtor give the possession of a chattel by delivery with his own hands or point it out and direct the creditor to take it, or tell him to take any he pleases for the payment of his debt, by the sale of it, the effect, after actual possession by the creditor, is the same."   The principle of this case is reaffirmed in *Carr* v. *Allatt* (*supra*).   In that case, though the instrument was in the form of a power of attorney rather than of a direct conveyance, it was construed to extend to stock and crops growing on a farm not occupied by the assignor at the time of its execution.   *Moody* v. *Wright* (*supra*), adopted the principles of these and the other English cases above cited.   The language of the Massachusetts court is, the executory agreement of the owner is a *continuing* agreement, so that when the creditor does take possession under it, he acts lawfully, under the agreement of one having the disposing power, and this makes the lien good.

The general idea running through these cases in a court of law appears to be that the executory agreement operates as a license, authority or power, revocable in its nature, until the creditor is either put into possession of the goods at the time or after they come into existence or are vested in the debtor.   As soon as *that new act has intervened,*

the lien of the creditor becomes perfect, and, in the absence of statutory regulation, prevails over the liens of subsequent executions. While this construction is given to a mere power to seize and hold the chattels as security, it may fairly be argued, that if the additional right is conceded to sell and appropriate the proceeds, the whole effect of the instrument is to constitute a grant, at least in equity. Thus, in *Markett* v. *Hill* (5 Bing. [N. C.], 694), it was held, that a license to search for and raise metals and also to carry them away, operated not merely as a license but as a grant, and passed an interest to the grantee, which was capable of being assigned by him. (See also *Wood* v. *Leadbitter*, 13 M. & W., 838; *Wickham* v. *Hawker*, 7 id., 63.) There is an additional rule which must be referred to as closely bearing upon the case at bar, as far as the ownership of the crops is concerned. It is well settled, that a grant of the future produce of land actually in possession of the grantor at the time of the grant passes an interest in such future crop as soon as it comes into existence. Thus, it was said in *Grantham* v. *Hawley* (Hobart, 132), "that he that hath land may grant all fruits that may arise upon it after, and the property shall pass, as soon as the fruits are extant." This principle was fully recognized in a recent case as applicable to the law of landlord and tenant. A tenant for years of a farm, being indebted to his landlord, assigned to him by deed "all his household goods and all his tenant right and interest yet to come and unexpired, in and to the farm and premises." It was held, that under this agreement the tenant's interest in crops grown in future years of the term passed to the landlord. (*Petch* v. *Tutin*, 15 M. & W., 110; see also Broom's Legal Maxims, 442 [5th Am. ed.].)

Upon the point whether the present transaction is to be governed by the same rules as though it were in form a chattel mortgage, it is scarcely necessary to spend much time. At law, a mortgage upon property not yet acquired is, according to the authorities, only a license, until a new act intervenes. The present case is certainly a license, and if possession be taken by the creditor, there is as much reason to connect the

new intervening act with the authority, as though the instrument were in form a mortgage. Moreover, I think that the instrument is in substance a mortgage. No special form of words is necessary to constitute a mortgage. The statement that the creditor is to have a lien, and that on default he may take possession and sell, in the same manner as in cases of chattel mortgage, sufficiently discloses the intent. The parties intended to enter into a transaction having some effect, and the only way to give it validity is to hold that in substance it has all the characteristics in equity of a mortgage, or of an equitable lien which for the purposes of this case is equivalent. The case of *Carr* v. *Allatt* (*supra*) shows that but little attention is to be paid to the form of the contract, the great purpose of the court being, as far as possible, to carry out the true and deliberate meaning of the parties, as far as this can be done consistently with the rules of law.

II. Thus far the investigation of this question has been confined to rules prevailing in courts of law. The rule in equity is much less technical and more comprehensive. It was not, however, fully settled until the elaborate discussion in *Holroyd* v. *Marshall* (10 House of Lords Cases, 191). The case was twice argued and received great attention, both from counsel and the court. It appeared that one Taylor was the owner of certain machinery in a mill. It was purchased by Holroyd, but not removed by him, Taylor continuing in possession. He, however, executed a deed by which it was declared that the machinery was the property of Holroyd; that he (Taylor) desired to repurchase it for £5,000, but had not the money to pay for it, wherefore it was conveyed to B. in trust when Taylor should pay the money to transfer to him, and if he did not pay to hold the property for Holroyd. There was a covenant that all the machinery which should be placed in the mill, in addition to or in substitution for the original machinery, should be subject to the same trusts. Taylor sold some of the original machinery, purchased some in addition, *but nothing was done by or on behalf of Holroyd to take possession of the newly-purchased machinery.* On

SICKELS—VOL. XX.      59

April 2, 1860, Holroyd served Taylor with notice of demand for payment of £5,000. An execution was afterwards levied by a creditor. This state of facts distinctly raised the point whether Lord BACON's rule that there must be "some new act intervening" in order to create the lien, prevails in equity. Lord WESTBURY puts the case on the ground that though the contract as to the future acquired property passed no title, yet that if a vendor or mortgagor agreed to sell or mortgage property of which he is not possessed at the time, and receives a consideration, and afterwards become possessed of property answering the description in the contract, that will in equity transfer the beneficial interest to the mortgagee or purchaser immediately out of the property being acquired. His line of argument was, that there was a trust imposed on the fund by the force of the contract, and that the incapacity to perform it at the time of its execution is no answer when the means of doing so are afterwards obtained. Accordingly it followed that as soon as the new machinery and effects were placed in the mill, they became subject in equity to the operation of the contract, and passed to the mortgagees, to whom Taylor was bound to make a legal conveyance, and for whom he was in the meantime a trustee of the property in question. (Pp. 156, 159.) Another member of the court (Lord CHELMSFORD) pointed out with more particularity the distinction between the rule in law and equity. In the former there must be a new intervening act; a mere license is not sufficient unless acted upon. In equity the estate attaches as soon as the property is acquired by the debtor. At law, property not existing, but to be acquired at a future time, is not assignable; in equity it is transferable. At law, though a power is given in a deed of assignment to take possession of after acquired property, no interest is transferred, even as between the parties themselves, unless possession is actually taken. In equity it is not disputed that the moment the property comes into possession the deed operates upon it. The court reviews certain cases which have sometimes been supposed to be opposed to those doctrines, e. g.,

*Langton* v. *Horton* (1 Hare, 549). It is declared that this case does not impugn the general principle. It admits the transaction to pass the title between the parties, while it departs from the rule in failing to apply it to third parties, as creditors. The *dicta* in *Mogg* v. *Baker* (3 M. & W., 198), to the effect that no equitable title passes without "the new intervening act" are disapproved, and Lord Wensleydale who, as Baron Parke, wrote the opinion in that case, admits when participating in the decision in this case (*Holroyd* v. *Marshall*), that he was mistaken so far as he stated in *Mogg* v. *Baker* a rule to be applied in equity. This carefully-considered case has undoubtedly settled the law in England. I think it to be entirely correct in principle. It perfectly coincides with the case of *Smithhurst* v. *Edmunds* (1 McCarter, 405). In that case it was held that the real question was, whether the transaction created an equitable mortgage. It was held that a mortgage of future acquired property would bind both real and personal estate, when acquired, as to the parties themselves and all persons claiming under them with notice. The same result was reached in *Mitchell* v. *Winslow* (2 Story, 639). So in *Rowan* v. *Sharp Co.* (29 Conn., 282), and in *Walker* v. *Vaughan* (33 Conn., 577) it was decided that the mortgage would attach to the property when acquired. There appears to be no well-considered decision in the equity reports to the contrary. There are several *dicta* by judges sitting in courts of law in opposition to those views, but they find no support in the equity tribunals. (See remarks in *Otis* v. *Sill*, 8 Barb., 102.) *Gardner* v. *McEwen* (19 N. Y., 123) is a case between the mortgagee and creditors, and was affected by our act concerning filing chattel mortgages. *Milliman* v. *Niher* (20 Barb., 37) is a case at law, and the rights of creditors were also involved.

The application of these principles to the case at bar can be briefly made. The matter comes up solely between the parties, there being no intervening rights of creditors. The plaintiff bought one horse of ·Mrs. Beahan before the execution of the

lease, and immediately after he took possession put it on the farm. Soon after going into possession he purchased two other horses which were also put on the farm. After an install-ment of the rent had become due he put a pair of horses in the possession of Dr. Beahan, as agent, saying, " I deliver them to you as Mrs. Beahan's agent." This was enough to make out the new intervening act required by Lord BACON's rule. The fact that Mrs. Beahan subsequently allowed the plaintiff to use the horses for a special purpose did not change the position of the parties, as the act of putting the landlord into possession fixed and established her rights. In regard to the crops and farm produce it is enough to say that they, as soon as they came into existence, vested in the landlord under the rule in *Grantham* v. *Hawley* (*supra*), even though it should appear that the plaintiff forbade the defendant from taking possession, a fact which does not clearly appear in the testimony, though it is plain that he prohibited the sale. The fact, however, that the plaintiff forbade the sale was wholly immaterial, as the right of the landlord was then indefeasible by any act of the tenant.

Wholly independent of these considerations, the owner, Mrs. Beahan, became, according to the rule in *Taylor* v. *Marshall*, vested in equity with the title to all the subjects coming within the scope of the agreement as soon as they either came into existence or became the property of the plaintiff. As soon as the latter took title he was a trustee for Mrs. Beahan. The defendant, acting as her agent, can justify his acts under her title. The equitable rights of Mrs. Beahan may be set up as a defence to the plaintiff's action of trover. (Code, § 150.)

Some point was made on the argument as to the language of the lease being inapplicable to the hay and crops. The lien is created on all " goods, implements, stock, fixtures, tools and other personal property which may be put on said premises." These words are broad enough to include the farm produce. This is sufficiently described by the word " goods." The cor-responding Norman French term " biens " is said to include

property of every description, except estates of freehold. (Bouvier's Dict., title "Biens.") Lord COKE says : "Goods, *biens*, *bona*, includes all chattels as well as real and personal." (Coke Litt., 118, *b ;* Williams on Personal Property, 2.) The farm produce may also be properly said to be "put" upon the premises. The word "put," in a general sense, means simply to "lay or place." When the crops were planted they were "put" upon the premises. This is also true of the hay, although while in the form of growing grass it was part of the realty. There is no reason for giving a narrow and technical interpretation to the words used, but the intent of the plaintiff to make his landlord secure for the rent should be carried out by making the words include all personal property of every kind placed by the tenant upon the premises.

If these views are correct, the judge at the Circuit erred in refusing to submit any question to the jury except that of damages.

The judgment of the General Term should be reversed and a new trial ordered.

GRAY, C. The lease executed by Catharine Beahan to the plaintiff was in consideration of several covenants on his part, one of which was, that she should have a lien, as her security for the payment of the rent, on all goods, implements, stock, fixtures, tools and other personal property which might be put on the demised premises; and that upon the non-payment of the rent, she might re-enter upon the demised premises, and enforce her lien by taking and selling his property thereon, in the same manner in which property might be taken and sold by virtue of a chattel mortgage. In the view I take of the rights of the parties under this provision of the lease, it is unnecessary to consider the objections taken by the it respondent. That it did not, by apt words, create the relation of mortgagor and mortgagee between the parties to it; and if it did, it was inoperative upon any property which, at the time of its execution, was not, actually or potentially, either possessed or owned by McCaffrey.

One object of the provision was, to invest Mrs. Beahan, after default in the payment of rent, with power to re-enter on the demised premises, and enforce its payment by taking such of the personal property of McCaffrey as had, through his agency, been placed thereon, and sell the same after the manner of taking and selling such property by virtue of a chattel mortgage; and for this purpose, it is not material whether any lien, prior to the actual taking, was or was not intended to be created by it. If a party borrow of another a sum of money, and in consideration thereof, to secure its payment, should covenant with the lender that in the event of his failure to pay at stipulated time, it should be lawful for the lender to enter upon the premises of the borrower and enforce the payment of the money borrowed by taking and selling his personal property thereon, in the manner of conducting sales under a chattel mortgage, such a covenant, as between the parties to it, would not be in contravention of any statute or rule ·of public policy; thus much, if nothing more, was secured to Mrs. Beahan by the provision referred to. The court whose judgment we are considering placed its affirmance of the judgment rendered at Circuit upon the ground that McCaffrey's covenant, conferring upon Mrs. Beahan the right, in default of the payment of the rent, to re-enter upon the demised premises, and enforce its payment by seizing and selling his personal property thereon, was a mere license, and revocable. It was more; it was an agreement under which, in consideration of this covenant, he was permitted to enter upon and enjoy the benefits of her property, and as irrevocable as her covenant authorizing him to enter, or his covenant to pay the rent.

The judgment appealed from, as well as the judgment at Circuit, should be reversed, and a new trial ordered.

All concur; EARL, C., in DWIGHT's opinion.

Judgment reversed.