EMMA E. CRESSEY, AS EXECUTRIX, ETC., OF WILLIAM CRESSEY, DECEASED, RESPONDENT, v. JOHN SABRE, APPELLANT.

*Chattel mortgage — when the mortgagee takes no title to things, not in existence at the time of its execution.*

April 12, 1877, plaintiff's testator executed a chattel mortgage to C. & V. upon a team of horses, "three acres of wheat, four acres of potatoes, twenty acres of oats." At the time of giving the mortgage, the potatoes were not in existence. In June, 1877, about two and a-half acres of potatoes were planted by plaintiff's testator, who died in the following August. In September or October the plaintiff, his widow and executrix, with knowledge of the mortgage, sold the potatoes to the defendant.

In an action by her to recover their price, *held*, that by the mortgage the mortgagees acquired no title to the potatoes, and that the fact that they claimed them from the defendant and forbid him to pay plaintiff, was no defence to the action.

APPEAL from a judgment of the County Court of Clinton county, affirming a judgment of a justice of the peace in favor of the plaintiff.

The court found that William Cressey, a resident of Ellenburgh and in possession of a farm in said town, which was the only land occupied by him at that time and up to the time of his death, executed a chattel mortgage, April 12, 1877, to John L. Carter and Freeman Vilas, whereby he granted, bargained and sold "unto the said mortgagees, their executors, administrators and assigns, forever, the following goods and chattels, herein expressed, now remaining and being in the possession of William Cressey, to wit: One red mare and one brown mare, and being the same horses purchased of Carter and Vilas; three acres of wheat; four acres of potatoes; twenty acres of oats." And that said mortgage was filed in the town clerk's office of Ellenburgh on the 28th day of April, 1877. That said Cressey became sick May 25, 1877, and was confined to his house until August 3, 1877, when he died, leaving a last will and testament, which was proved before the surrogate of Clinton county and letters testamentary issued to his widow, the plaintiff, October 8, 1877,

and she entered upon the discharge of her duties, and as such brings this action.

That in June, 1877, the said William Cressey caused to be planted on the above mentioned farm one piece of potatoes of about two and one-half acres, and another piece of potatoes of about one-fourth of an acre, and that no potatoes were planted on the said premises at the date of said mortgage; and from those pieces of potatoes the plaintiff caused to be dug, sold and delivered to the defendant in the months of September and October, 1877, 216 bushels of potatoes at the agreed price of twenty-five cents per bushel, and the defendant paid towards the same fifteen dollars and sixty-five cents, and refused to pay the balance of thirty-eight dollars and thirty-five cents. That prior to the commencement of this action, Carter and Vilas had given him notice that they owned the said potatoes by virtue of the said chattel mortgage, and not to pay plaintiff for said potatoes as the money due therefor belonged to them and that he must hold this money subject to their order. That in the fall of 1877, and before the potatoes were sold to the defendant, Henry Cressey, a son of testator, informed the plaintiff that there was a chattel mortgage on these potatoes, and that before the potatoes were planted, the said William Cressey told E. Plumley that Carter and Vilas had a chattel mortgage on his crop of that season.

The court directed judgment for the plaintiff, with costs.

*Beckwith & Reilly*, for the appellant.

*D. S. McMasters*, for the respondent.

BOARDMAN, J.:

This action was originally brought in a justice's court. No equities of the parties can therefore be regarded or protected, since a court of a justice of the peace has no equitable jurisdiction.

Plaintiff sold defendant a quantity of potatoes. They were partially paid for. The defendant refused to pay the balance due on the contract because, as he maintains, plaintiff had no title to the potatoes sold. If Carter and Vilas were entitled to the potatoes under their chattel mortgage the defence is sustained. So far as

relates to the potatoes the mortgage was given upon property having no legal existence. It was an ordinary mortgage to secure money lent and was dated April 12, 1877. Plaintiff's testator was the mortgagor, and Carter and Vilas were the mortgagees. The mortgage purported to cover, among other property, "four acres of potatoes." At the date of the mortgage the mortgagor had no potatoes of any kind ; but afterwards in June, 1877, he planted about two and three-fourths acres of potatoes, and the potatoes in suit are the product of such planting. It is well settled, we think, that such an instrument, whether called a mortgage or a bill of sale, will not in law pass any title to property, like that in suit, having no actual existence. Ordinarily crops not in existence and not then growing are not the subject of mortgage. (*Milliman* v. *Neher*, 20 Barb., 37; by BOCKES, J.; *Otis* v. *Sill*, 8 Barb., 102.) But trees, grass or other growing crops upon the ground, or wool upon sheep's back may be mortgaged. That would be a mortgage of a thing in actual existence, in process of growth, though still imperfect and immature. In certain cases of leases, covenants that the lessor shall have all the grain to be grown upon the lands rented as security for unpaid rent have been held good. (*Conderman* v. *Smith*, 41 Barb., 404; *Van Hoozer* v. *Cory*, 34 Barb., 9; *McCaffrey* v. *Woodin*, 65 N. Y., 459, and cases cited.) But it is not quite correct to call such instruments mortgages· DWIGHT, C., says of such a contract: "The only way to give it validity is to hold that in substance it has all the characteristics in equity of a mortgage or of an equitable lien, which for the purposes of this case is equivalent." But all of these cases arose between the parties to the lease or contract, and hence could be supported with greater justice than if the rights of creditors or third persons had intervened. Commissioner DWIGHT further says, page 464 : "At law, a mortgage upon property not yet acquired is, according to the authorities, only a license until a new act intervenes." The new act which must intervene is the taking of possession by the creditor under his contract. GRAY, C., with his usual clearness, makes plain the relations of the parties. He says : "That it did not by apt words create the relation of mortgagor and mortgagee between the parties to it ; and if it did, it was inoperative upon any property which at the time of its execu-

tion was not actually or potentially either possessed or owned by McCaffrey," and he holds that the right to hold the property was an irrevocable agreement supported by a good consideration. Again, it is said the owner of real estate may grant and sell the future produce of such land, and that such grant will carry future crops as fast as they come into existence. (*McCaffrey* v. *Woodin*, *supra*, p. 464, and cases cited.) But here no such grant is alleged or proved.

But this is not a contest between the parties to the alleged mortgage, but between one of them and a third person. Carter and Vilas have acquired no right by taking possession. Their rights must be governed by the force and effect of the mortgage. As we have seen the potatoes on the four acres had no actual existence when the mortgage was executed. They had no potential existence — that is nothing was then in existence in process of growth ; there was no grant of the produce of any land. Hence we must hold that the mortgage was inoperative as to the potatoes, and that the plaintiff ought in law to recover the remainder of the purchase-price which defendant agreed to pay.

The judgment should be affirmed, with costs.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment affirmed, with costs.