CASE No. 907.

PARKER & CO. v. JACOBS.

1. The rule at law and in equity stated, as to rights of a mortgagee of personal property in which the mortgagor had no interest, actual or potential, at the date of his mortgage.
2. Where such mortgage has been executed, and an antecedent creditor subsequently obtains judgment against the mortgagor, and levies upon the property before it is delivered to the mortgagee, the mortgagee is entitled to recover its possession from the officer making the levy.
3. Where it was stipulated in such mortgage that the mortgaged property should be delivered to the mortgagees in Charleston to be sold by them

as factors, a delivery of the property to a railroad company for shipment consigned to the mortgagees, is not a delivery to them, nor a transfer of the legal title.

4. A plaintiff, since the code, can enforce an equitable right to property in dispute under a form of action which seeks relief formerly obtainable only in a court of law.

———

Before FRASER, J., Williamsburg, February, 1880.

Action commenced in July, 1879, by J. H. Parker & Co., against Louis Jacobs, sheriff of Williamsburg county. The presiding judge ordered a non-suit upon the motion of defendant. Plaintiff appealed. The property in dispute was levied upon as the individual property of W. A. Ward. The other facts are stated in the opinion.

*Messrs. Dozier & Gilland,* for appellants.

*Mr. J. A. Kelley,* contra.

August 31st, 1880.   The opinion of the court was delivered by

McIVER, A. J.   This was an action to recover the possession of ten barrels of spirits of turpentine and forty-eight barrels of rosin, upon which the defendant had levied under an execution against Ward & Hinson, and which the plaintiffs claimed under a mortgage executed by Ward, one of the members of that firm, to them, prior to the recovery of the judgment upon which such excution was issued.

It did not appear from the original record submitted here whether the turpentine and rosin, the subject of this suit, was the product of a turpentine farm in the possession or under the control of the mortgagor, Ward, at the time the mortgage was executed, or whether it was subsequently bought by him; and the counsel engaged in the cause agreed that the Circuit judge should be requested to amend the " case " by a further statement of the evidence upon this point.   In this additional statement, which has been filed with the original record, as a part thereof, the Circuit judge says: " There was no evidence before me as to whether the crude turpentine, from which the rosin and spirits

H

were made, was the product of a turpentine farm worked by W. A. Ward, or was bought by him.    *    *    *    The witness. W. A. Ward, the mortgagor, only said that the rosin and spirits of turpentine were made in his 'business in this county,' which included purchasing crude turpentine as well as making it on turpentine farms." Now, as the burden of proof is upon the plaintiffs, and as they, according to this statement, have not shown that the property in dispute was in the possession of the mortgagor at the time of the execution of the mortgage, or that it was the natural product of anything then in his possession or under his control, the precise question which we are first called upon to consider, is whether a mortgage of personal property of which the mortgagor has no possession or right of possession at the time, and which is not the natural product of something of which he then has either the possession or right of possession, confers any rights upon the mortgagee, after the property is acquired by the mortgagor, and before it is delivered to or taken possession of by the mortgagee under the mortgage.

There can be no doubt that the rule *at law* is that it is necessary to the validity of the mortgage that the mortgagor should have a present property, either actual or potential, in the thing mortgaged, (1 *Jones on Mortgages*, § 149;) but in equity the rule is different. As is said by Judge Story in *Mitchell* v. *Winslow*, 2 *Story* 630 : "It seems to me the clear result of all the authorities that wherever the parties, by their contract, intended to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or not, or if personal property, whether it is then *in esse* or not, it attaches, in equity, as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice or in bankruptcy." This doctrine is fully established by the case of *Holroyd* v. *Marshall*, 10 *H. L. Cas.* 191, and is recognized in *McCaffrey* v. *Woodin*, 65 *N. Y.* 459.

We take it, therefore, that a mortgage on personal property in which the mortgagor has no present interest, either actual or potential, is ineffectual to transfer the *legal* title to such property

when subsequently acquired by the mortgagor, unless, when acquired, possession thereof is given to the mortgagee or taken by him under the mortgage, (*Moody* v. *Wright*, 13 *Metc.* 32; *Williams* v. *Briggs*, 11 *R. I.* 476, and may other cases there cited,) but that, in equity, such a mortgage is effectual to charge the property, as soon as it is acquired by the mortgagor, and before possession is obtained by the mortgagee, with an equitable lien which will prevail against a subsequent judgment or attaching creditors. *Holroyd* v. *Marshall*, 10 *H. L. Cas.* 191; *Mitchell* v. *Winslow*, 2 *Story* 630; *Smithurst* v. *Edmunds*, 14 *N. J. Eq.*, 1 *McCarter* 408; *McCaffrey* v. *Woodin*, 65 *N. Y.* 459.

Let us apply these principles to the case under consideration. The language of the mortgage clearly shows an intention to give a lien, not only upon the spirits of turpentine and rosin then in the possession of the mortgagor, but also upon all "which he may produce or prepare for market *or otherwise acquire.*" It is certainly broad enough to cover, not only the turpentine and rosin which might be the product of either of the farms mentioned in the mortgage, but also any that the mortgagor might purchase or otherwise acquire. Assuming then that the property in dispute was not the product of either of the farms mentioned in the mortgage but was bought by the mortgagor subsequent to the execution of the mortgage, yet, according to the principles above established, the plaintiffs were entitled to an equitable lien thereon as soon as it was acquired by the mortgagor, though they could not be said to have a legal right thereto until it was delivered to or taken possession of by them under the mortgage.

The next inquiry is, whether the property in dispute, after it was acquired by the mortgagor, was delivered to or taken possession of by the mortgagees before the rights of third persons had intervened by the levy made by the sheriff. According to the terms of the mortgage the mortgagor bound himself to "consign, send, ship and deliver to the said J. H. Parker & Co., *in Charleston,* all the crude turpentine, rosin and spirits of turpentine already made by him and to be made by him, or owned or to be owned by him; * * * also, all the crude turpentine, rosin and spirits of turpentine that he shall purchase in his

general business, to be sold by the said J. H. Parker & Co., as factors, on the usual commissions," &c. The delivery by the mortgagor to the railroad company of the property in dispute, to be carried to the plaintiffs, in pursuance of the above recited covenant, was not, in our judgment, such a delivery to, or taking possession of, by the mortgagees under the mortgage as would perfect their legal title. The purpose was that the property *should be* delivered to the plaintiffs *to be sold by them as factors.* It never was actually delivered into the possession of the mortgagees, and the *legal* title was never transferred to them. The test of this is that if the property had been lost or destroyed before it reached Charleston the loss would have fallen upon the mortgagor and not upon the mortgagees. The agreement was to deliver *in Charleston,* and until the property reached that place it could not be said to be delivered in accordance with the terms of the agreement, and, therefore, the legal title never passed to the plaintiffs by delivery. There was no transfer, by writing, as in the cases cited upon this point, by the appellants; the mortgage, as we have seen, being insufficient for that purpose, so far as the subsequently acquired property was concerned, and, as there was no delivery, the legal title never passed.

The plaintiffs must, therefore, rely solely upon their equitable rights, which, as we have seen, they acquired by virtue of the mortgage, even before the property was delivered to or taken possession of by them. The question then is narrowed down to the inquiry whether this equitable lien of 'the plaintiffs can prevail against the execution under which the defendant levied upon the property in dispute. This execution was issued to enforce a judgment recovered in March, 1879, and could have no lien on the property until it was levied, and as the equitable lien of the plaintiffs arose as soon as the property was acquired by the mortgagor, it was, of course, prior, in point of time, to the lien of the execution. The real question, therefore, is whether an equitable lien can prevail against the lien of an execution subsequently acquired. In *Dow* v. *Kerr, Spear's Eq.* 417, Johnson, Ch. says: " The language of all the books is that an agreement to mortgage is an equitable lien and has precedence of subsequent judgments and all general creditors." To support this proposition

he cites *Massey* v. *McIlwain*, 2 *Hill's Ch.* 428 ; *Reddos* v. *Gail-lard*, (which should be Read *v.* Administrator of Simons,) 2 *Desaus.* 552. To same effect, see, also, *Welsh* v. *Usher*, 2 *Hill's Ch.* 167 ; *Bank* v. *Campbell*, 2 *Rich. Eq.* 191. It is true that the question in all these cases arose prior to the act of 1843, and, therefore, if, as in the case of *Boyce* v. *Shiver*, 3 *S. C.* 515, the controversy was between an equitable mortgagee and *a subsequent creditor or purchaser*, the result would be different. But here there is not only no evidence that the defendant or those whom he represents occupies the position of a subsequent credi-tor or purchaser, but from the fact that the judgment was recovered in March, 1879, only about two months after the execution of the mortgage, the reasonable inference is that the creditor, whose execution the defendant was attempting to enforce, was an antecedent creditor.

The only remaining question is whether the plaintiffs can, in this action which seeks relief formerly obtainable only in a court of law, enforce their equitable right to the possession of the prop-erty in dispute. Prior to the code, this unquestionably, could not have been done. That statute has, however, introduced fundamental changes in the forms of proceedings for the enforce-ment and protection of rights in the courts of this state. One of the most important of these changes is that found in Section 92 : " The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished ; and there shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action." Hence when one comes into court asking for the enforcement or protection of his rights, it does not matter what the nature of his rights may be, whether legal or equitable, he must pursue them by the same form of action. If his alle-gations and proofs satisfy the court that he is entitled to relief he will obtain it, and the fact that his title to such relief is based upon an equitable rather than a legal right cannot affect or be affected by the form of the action, for, as we have seen, the code provides that there shall be but one form of action for the en-forcement and protection of both classes of rights. Such is

conclusively shown to be the proper and legitimate construction of the code by Mr. Pomeroy in his work on Remedies, Chap. I., §§ 2 and 5, although a different view seems to prevail in some of the states which have adopted this system of procedure. As is said by Johnson, J., in *Crary* v. *Goodman*, 12 *N. Y.* 266 : " Since the enactment of the code the question is not whether the plaintiff has a legal right or an equitable right, or the defendant a legal or an equitable defence against the plaintiff's claim, but whether, according to the whole law of the land applicable to the case, the plaintiff makes out the right which he seeks to establish, or the defendant shows that the plaintiff ought not to have the relief sought for." Or, as is said by Sanderson, J., in *Grain* v. *Aldrich*, 38 *Cal.* 514 : " Legal and equitable relief are administered in the same forum, and according to the same general plan. A party cannot be sent out of court merely because his facts do not entitle him to relief at law, or merely because he is not entitled to relief in equity, as the case may be. He can be sent out of court only when, upon his facts, he is entitled to no relief either at law or in equity." If, therefore, the plaintiffs, while failing to show that they have a *legal* right to the possession of the property in dispute have succeeded in showing an equitable right to such posssession, we see no reason why they should be denied the relief demanded in this action, simply because their title to such relief is based upon an equitable and not upon a legal right.

The judgment of the Circuit Court is reversed and a new trial is ordered.

Willard, C. J., and McGowan, A. J., concurred.