# Cases

JULIUS S. DRESSER, RESPONDENT, *v.* THE UNITED
FIREMEN'S INSURANCE COMPANY AND OTHERS,
APPELLANTS.

*Insurance — the dissolution of a firm does not constitute a transfer of the insured
property — what is a sufficient notice that the assured is not the absolute owner —
when a failure to state a lien in proofs of loss will not avoid the policy.*

This action was brought to recover the damages sustained by fire, under a policy
of insurance issued on October 11, 1884, by the defendants to the plaintiff and
Frank J. Callanen, under the firm name of Dresser & Co. It contained a
provision that it should become void "by the sale or transfer or any change in
title or possession of the property insured." On May 30, 1885, the firm was
dissolved, the interest of Callanen in the firm property was transferred to
Dresser, and Dresser executed a chattel mortgage on the property for $2,000
to Callanen to secure the purchase-price.

*Held*, that the dissolution of the partnership, the transfer of Callanen's interest
in the property to Dresser, and the giving of the chattel mortgage by Dresser,
did not work such a transfer of interest as to avoid the policy.

The policy contained the following, among other provisions: "It is agreed and
understood that the above building stands on leased land. * * * It being
understood, unless otherwise expressed in this policy, that the interest of the
assured is the entire, unconditional and sole ownership of the property, and
that all buildings intended to be insured by this policy stand on ground owned
in fee simple by the assured." Upon the trial Callanen testified that he talked
with the agent of the defendants about the insurance, and notified him that
the building was on leased ground, and that the agent saw a copy of the lease

---

* Adjourned from April term,

and they talked about it.  By the lease the whole rent was declared to be a valid first lien upon the building and improvements, and in case any install-ments of rent should remain due and unpaid, the lessor was authorized to sell them at public auction, after giving ten days' notice in a daily newspaper, and that, except as aforesaid, the said building should remain the property of the lessees, and might be removed by them at the expiration of the lease.

*Held*, that as the agent was notified that the building stood on leased land, and inserted that fact in the policy, the above provision was sufficiently com-plied with.

That if the agent read the lease, as it was claimed he did, the policy could not be avoided by reason of the existence of the lien created in favor of the lessor.

That the clause in the lease, in reference to the lien and its enforcement, did not operate to transfer the title to the building and improvements to the lessor.

The policy required that the assured should furnish proofs of loss, stating, among other things, the title and interest of the assured, and of all others in the property.

*Held*, that the failure to refer to the said lien of the lessor in the proofs of loss furnished by the plaintiff, or on an examination of the plaintiff by the defend-ants, did not avoid the policy under a clause therein providing that it should become void " by fraud, or attempt at fraud, in the procurement of this policy, or in the proof of loss or by false swearing, or by any other means."

APPEAL from a judgment entered in Oneida county upon a verdict taken at the Oneida Circuit.

The action was brought to recover damages sustained by fire, under a policy issued on October 11, 1884, to the plaintiff and Frank J. Callanen, under the firm name of Dresser & Co.  In July, 1884, the firm of Dresser & Co., took from William H. Watson a lease of certain lands upon which to erect buildings to be used as a skating rink, on Genesee street in the city of Utica.

The policy contained the following words, viz. : " It is agreed and understood that the above building stands on leased land;" * * * also, "it being understood, unless otherwise expressed in this policy, that the interest of the assured is the entire, uncon-ditional and sole ownership of the property, and that all buildings intended to be insured by this policy stand on ground owned in fee simple by the assured ; " * * * also, " this policy shall become void and of no effect * * * by the sale or transfer, or any change in title or possession of the property insured.  * * * By fraud, or attempt at fraud in the procurement of this policy, or in the proofs of loss. or by false swearing or by any other means."

The policy contained a clause under a subdivision, relating to

adjustment and payment of loss, providing that "all proceedings after a loss shall be in accordance with the terms and stipulations printed on the back of this policy. First. When a fire has occured, injuring the property herein described, the assured shall give immediate notice of the loss in writing to this company; and within fifteen days after the fire, unless the time be extended by the company in writing, shall render to this company in writing a particular statement of the loss, signed and sworn to by the assured, stating such knowledge or information as the insured has been able to obtain as to the origin and circumstances of the fire, and also stating the title and interest of the assured, and of all others in the property, the cash value thereof," etc.; also, "the assured shall, whenever required, submit to examination under oath, by any person appointed by this company and subscribe to such examination when reduced to writing, and shall also as often as required produce their books of account." * * *

Callanen testified that he had talked with Hurlbert about the insurance while acting for the firm, and that he gave notice to him that the building was on leased ground, and added, viz.: "Hurlbert saw a copy of the lease that I had; we took the more particular portions of it and talked of it; I won't say whether he read it or not; I know he knew about this because we talked it over; in taking out the insurance the matter of the lease and the lien that Watson had on the property was talked of; I remember that."

On May 30, 1885, the copartnership of Dresser & Co. was dissolved, and the interest of Callanen in the firm property was transferred to Dresser, and Dresser executed a chattel mortgage to Callanen for $2,000 on the property, to secure the purchase-price. After the fire the company caused the examination of the plaintiff to be taken in pursuance of the provision as to proof of loss contained in the policy. Upon that examination Dresser stated there was no incumbrance other than the Callanen mortgage; no real or chattel mortgage on the premises or property in question or any part of it, and never had been. "No one had any interest in the property aside from myself and Callanen." Upon the trial of this action the witness Dresser testified, viz: "At the time I was examined all the rent which had accrued was paid up; I think there was something unpaid on the rent at the time of the fire; rent was payable in

advance and I think some was due at the time of the fire." In the lease of Watson to the firm was the following language, viz. : " The parties of the second part covenant and agree to pay to the party of the first part as rent for the use of said premises the sum of sixteen hundred dollars per annum, * * * quarterly * * * in advance * * * It is expressly understood and agreed by the parties hereto, that the whole rent aforesaid and each and every quarterly installment thereof during the term aforesaid or any renewal of this lease shall be and hereby is declared to be a valid and first lien upon any and all buildings and improvements which may or shall be erected or made or put on said premises by said parties of the second part, and whenever and as often as any installments of said rent shall become due and remain unpaid for ten days after the same becomes due and payable, said party of the first part * * * may sell at public auction to the highest bidder after having first given ten days' notice of the time and place of such sale in a daily newspaper * * * the buildings and improvements aforesaid on said premises, or such parts thereof as may be necessary, and all the right, title and interest acquired by said parties of the second part under this lease to said premises, * * * and, except as aforesaid, the said buildings and improvements which may or shall be erected, made or put on said premises, shall be and remain the property of the said parties of the second part, * * * subject to the liens aforesaid, and at the expiration of this lease or of any extension thereof, on payment of all rent due thereon, said parties of the second part shall have the right and privilege to remove from said premises any and all buildings and structures they have erected thereon. * * *

*Garfield, Kellogg & Wells,* for the appellants.

*Goodwin & Swan,* for the respondent.

HARDIN, P. J. :

The dissolution of the partnership, the transfer of Callanen's interest in the property to Dresser, the chattel mortgage given by Dresser & Co. to Callanen, did not work such a transfer of interest as to avoid the policy in question. (*Hoffman* v. *The Ætna Fire Insurance Co.,* 32 N. Y., 405 ; *Keeney* v. *Home Insurance Co.,* 71 N. Y., 402.)

When Hurlbert, the agent, issued the policy in question, he was informed that the buildings were upon leased land, and inserted in the policy the clause indicating that fact, and also his knowledge of the fact. We think there was a sufficient compliance with the condition of the policy requiring the interest of the insured in the premises to be stated, and that the knowledge communicated to the agent of the fact that the building stood upon leased land, and the issuance of the policy thereafter indicated that there was an intent on the part of the parties to comply with that condition of the policy which requires the interest of the assured to be stated, if the same shall be less than the fee. (*Short* v. *Home Insurance Co.*, 90 N. Y., 16.)

If the agent, Hurlbert, read the lease before or at the time of issuing the policy, he became aware, and through him the company received notice that the lease created a lien in favor of the lessor. After notice or knowledge of that fact the policy was issued, and cannot be avoided by reason of the existence of the lien in favor of the lessor. The clause in the lease did not operate to transfer the title to the property to the lessor. On the contrary, the lease expressly provides that the title to the property shall remain in the lessees, subject, however, to the lien. By the terms of the lease the title to the property and the possession thereof was to remain in the lessees until steps were taken to enforce the lien given upon the property. The lease in terms was not a chattel mortgage. There was no present intention to transfer the legal title to the property to the lessor. (*McCaffrey* v. *Woodin*, 65 N. Y., 459; *Streeter* v. *Ward*, MS. opinion, FOLLETT, J., July 1, 1887, and cases cited.)

It is contended by the appellant "that the proofs of loss were false in reference to the existence of the Watson mortgage or lien, and this avoids the policy." The language of the policy is that the same shall be void and of no effect "by fraud, or attempt at fraud, in the procurement of this policy, or in the proofs of loss, or by false swearing, or by any other means."

Upon looking into the evidence given upon the trial, we are of the opinion that there was not sufficient proof to warrant a finding by the jury that the plaintiff attempted fraud by means of his proofs of loss submitted to the company. It is quite apparent that

he was not attempting to mislead the company by his statement in the proofs of loss that "no other person had any interest in said property." There had been no seizure of the property by the lessor, or other enforcement of the lien clause contained in the lease, and, taking the entire language of the lease, it is apparent there was an intent to leave the ownership of the property in the lessess and to subject it to a conditional lien in favor of the lessor. But if it be assumed that the lien clause of the lease created "an interest in the lessor," the evidence falls far short of showing that the plaintiff willfully and fraudulently stated that no other person had any interest in the property. (2 Wood on Fire Ins., §§ 455, 1004, [ed. of 1886] ; *Titus* v. *Glens Falls Insurance Co.*, 81 N. Y. 410.)

It is contended by the appellant that by reason of the insertion of the words in respect to the absence of the lien in the proofs of loss, and by a statement to like effect on the preliminary examination had of the plaintiff, that there was a breach of warranty. We are of the opinion that the position is not tenable. It is difficult to suppose that the contracting parties had in mind any slight or unimportant mistake that might be made in the course of the preparation of proofs of loss, or in a statement of the evidence in a preliminary examination had under the policy, and that any such mistake or innocent deviation from the actual facts should be regarded a breach of a warranty. We are more inclined to regard the language used by the parties as providing for a forfeiture of the policy in case of any fraud or fraudulent practices in regard to the proofs of loss or the preliminary evidence required of the insured.

We are, therefore, of the opinion that the learned trial judge committed no error in receiving testimony tending to show that the insertion in the proofs of loss, as well as the statement made in the preliminary examination in regard to the absence of any incumbrance upon the property, occurred without any fraud or fraudulent intent or felonious purpose on the part of the insured.

As the trial was nearing the close, the court inquired of the counsel for the defendant, viz.: "Do you desire to have any questions of fact submitted to the jury?" The counsel answered, "There is no question I can have except the question of value." Again the court inquired: "I understand, then, that you do not

request the court to submit anything else to the jury except the question of damages?" The counsel replied, "I don't know of any question that I can go to the jury on." Near the close of the charge, the counsel for the defendant observed, viz.: "If they find that the fire was caused by the act of the plaintiff, or by his procurement, knowledge, connivance or consent, then their verdict should be for the defendant." Thereupon the court observed: "You have not asked me to submit any such question to the jury before. What question of fact am I to submit to them?" The counsel replied, viz.: "Simply that." Thereupon the court observed, viz.: "What question of fact am I to submit to them to permit them to find for the defendant?" The counsel responded, "That simple question; if they find that the fire was caused by his own act, knowledge, connivance or consent, that they should find for the defendant." Thereupon the court observed: "Do you claim that there is any evidence on that? I want to know whether you claimed upon the evidence that there was any question of fact, except the question of damages, for the jury?" Thereupon the counsel replied: "I think I was right; but let them take it and determine it; never mind."

It is quite apparent from the quotations we have just made, as well as from a perusal of the evidence, there was no question of fact beyond that of damages, upon which the jury would have been warranted in finding a verdict in favor of the defendant.

We are of the opinion that the learned trial judge committed no error in the progress of the trial, of which the defendant can complain. We think the judgment should be sustained.

BOARDMAN and FOLLETT, JJ., concurred.

Judgment affirmed, with costs.